## UNITED STATES

v.

**Bruce Alfred ROBINSON, 138 48 0058, Aviation Structural Mechanic (S) Second Class (E–5), U.S. Navy.**

**NMCM 82 0956.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 23 March 1981.

Decided 29 Oct. 1982.

CDR Matthew J. Wheeler, JAGC, USNR, Appellate Defense Counsel.

LT Lois B. Agronick, JAGC, USNR, Appellate Defense Counsel.

CDR Jay M. Siegel, JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, Senior Judge, and KERCHEVAL and BARR, JJ.

**PER CURIAM:**

Appellant was convicted at a special court-martial bench trial for the possession and use of marijuana on 7 November 1980, the possession of marijuana and cocaine on 19 December 1980, resisting apprehension, and the larceny of contraband seized by the Government, violations of Articles 92, 95 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 895, 921, respectively. The military judge sentenced appellant to confinement at hard labor for three months, reduction to pay grade E–3, and a bad-conduct discharge. The convening authority approved the sentence as adjudged, but the supervisory authority suspended the punitive discharge for one year from the date of his action. Appellant assigns four errors for our consideration.

I

THE MILITARY JUDGE ERRED TO THE PREJUDICE OF THE APPELLANT BY RECEIVING PROSECUTION EXHIBIT 10 INTO EVIDENCE (R. 145) WHEN THE EVIDENCE WAS INSUFFICIENT TO ESTABLISH IT AS QUALIFYING FOR THE BUSINESS RECORD EXCEPTION TO THE HEARSAY RULE. MILITARY RULES OF EVIDENCE 144c. (sic); *UNITED STATES V. WILSON,* 1 M.J. 325 (C.M.A. 1976).

At trial, defense counsel objected to the admission of Prosecution Exhibit (PE)–10, a Naval Investigative Service (NIS) chain of custody document, on the grounds that the form was not a qualified business document exception to the hearsay rule. Testimony at trial by NIS Agent Elliott established that the name of the person from whom the property had been seized was not entered on PE–10. Also, Agent Elliott testified that the evidence custodians and lab analysts who signed for the receipt of the evidence were not the same persons who signed for its respective release. Agent Elliott possessed first-hand knowledge of custodial and laboratory procedures and explained to the satisfaction of the court that the variations in signatures were only a

result of different persons in the same custodial offices who received and released the evidence. Agent Elliott personally identified the fungible items, and established that identifying marks on those items corresponded to notations on PE–10.

■ The record and appellant's asserted error must be analyzed under the well established principles which affect the admission of fungible contraband, laboratory analysis thereof, chain of custody documents and presumptions of regularity, as announced in recent cases. *See United States v. Madela,* 12 M.J. 118 (C.M.A.1981); *United States v. Lewis,* 11 M.J. 188 (C.M.A. 1981); *United States v. Parker,* 10 M.J. 415 (C.M.A.1981). The fungible items were marked for ready identification, and were so identified by Agent Elliott. Prosecution Exhibit-10 had identifying sample notations which corresponded to Agent Elliott's identification marks. Agent Elliott's personal knowledge of custodial office and laboratory analysis business operations reduced any doubt that PE–10 was not a valid business record exception to the hearsay rule. Accordingly, we find no merit to appellant's summary assertion in Assignment of Error I.

II

THE GOVERNMENT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE APPELLANT USED MARIJUANA ON 7 NOVEMBER 1980 WHERE THE EVIDENCE SHOWED ONLY THAT MARIJUANA HAD RECENTLY BEEN USED IN THE ROOM, WITHOUT PROVIDING DIRECT EVIDENCE THAT THE APPELLANT, RATHER THAN OTHERS IN THE ROOM, HAD USED IT. (R. 81). *UNITED STATES V. PAPENHEIM,* 19 U.S.M.C.A. 203, 41 C.M.R. 203 (1970); *SEE ALSO UNITED STATES V. NEAL,* 40 C.M.R. 533 (A.B.R.1969).

■ The government's witness, Petty Officer Myers, established that Myers was sharing a room with appellant in Barracks 328; he was experienced with the smell of

marijuana and could recognize it both by sight and by smell. When Myers walked into the room on 7 November 1980, he saw appellant and others sitting around a table. The room reeked of marijuana which Myers believed had been smoked within the last 10–15 minutes. Appellant was observed cleaning foreign matter from some marijuana, preparing to roll a marijuana cigarette. The witness left the room to notify the security guards. When he returned, appellant and the others had fled, leaving the remains of a marijuana cigarette in an ashtray on the table in the room. Under these facts, we find appellant guilty of using marijuana, as charged, beyond a reasonable doubt. Accordingly, Assignment of Error II is dismissed.

## III

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY DENYING HIS MOTION TO SUPPRESS BECAUSE THE GATE SEARCH PROCEDURE WAS ILLEGAL IN THAT:
1. THERE WAS A DENIAL OF EQUAL PROTECTION BY EXCLUDING OFFICERS 0–6 AND ABOVE FROM THE SEARCH, AND BY DISCRIMINATORY TREATMENT AGAINST PEDESTRIANS, AND
2. THE SCOPE OF THE SEARCH WAS OVERLY INTRUSIVE AND THUS VIOLATED THE FOURTH AMENDMENT. (R. 5–51). *UNITED STATES V. HARRIS,* 5 M.J. 44 (C.M.A.1978).

Appellant initially asserted this error in summary fashion. We requested briefs because of the constitutional magnitude and first impression perspective of the equal protection issue. Appellant argues that the classifications of officer pay grades 0–6 and above, and pedestrians are irrational and do not relate to the government purposes for conducting the gate inspection. We do not agree.

By written order of the Commanding Officer, Naval Air Station, Miramar, California, (NAS, Miramar), the station security officer was directed to inspect, in a prescribed, pre-determined random pattern, all vehicles entering the base except those driven by officers in a pay grade 0–6 and above. All pedestrians entering the base were to be searched. The inspection was to be conducted between 1800–1900, on 19 December 1980. *See generally United States v. Brown,* 12 M.J. 420 (C.M.A.1982); *United States v. Harris,* 5 M.J. 44 (C.M.A.1978).

At about 1815, 19 December 1980, appellant and a passenger in his car were stopped at the main gate of NAS, Miramar while driving in appellant's car. The car was stopped pursuant to the aforementioned instruction, appellant and his passenger were patted down, required to empty their pockets and have any luggage, brief cases, wallets, etc., searched. During the search of appellant, security officers found what they suspected to be a marijuana cigarette in his wallet. Appellant's on-base driving privileges were revoked, and his car ordered off base. A few minutes later, appellant attempted to enter the base on foot. As a pedestrian, he was again subjected to the same extensive search. One security officer noticed a piece of white paper, commonly known as a "snow-seal," for holding cocaine, drop to the ground by appellant's foot. Indeed, this object was tested, and it was determined that it contained cocaine. Appellant was placed under apprehension, but before further inspection could be effected, appellant fled. He was apprehended shortly thereafter.

■ Initially, we would note that the command procedure under consideration is not a search, but a command directed inspection. As such, the legality of the procedure and its implementing order of authorization, as distinguished from the constitutionality of the order itself, is governed by Mil.R.Evid., 313(b) (MRE). Assessing first the assertion that the scope of the gate inspection was overly intrusive (pat down, search of luggage, etc.), we find the procedure as implemented to meet the statutory standards set forth in MRE 313(b), to encompass the well-established requirements of *United States v. Harris, supra,* and to be

eminently reasonable in relation to the purpose of the inspection. *United States v. Brown, supra.* We, therefore, find no merit to the claim that the scope of the inspection was overly intrusive or, as a necessary corollary, that a search, entitled to the protection of the Fourth Amendment, emerged as a result of the methods utilized in conducting the inspection.

■ We turn next to the contention that appellant was denied the equal protection of the law, as guaranteed by the Due Process clause of the Fifth Amendment, U.S. Constitution, because officers in grade O–6 and above were excluded from, and all pedestrians (vice those selected randomly, as was the procedure applied to entering vehicles) were included within, the reach of the inspection order. Appellant correctly concedes that the "classifications" created by the order, that is, all military personnel in grade O–5 and below, as limited by the process of random selection, and all pedestrians, are not "suspect classes," such as race, alienage, or national origin. Furthermore, he does not assert, nor do we find, a violation of any "fundamental right" explicitly or implicitly guaranteed by the Constitution. The doctrine that submits "suspect classifications" and discriminatory practices affecting "fundamental rights" to strict judicial scrutiny is therefore not appropriate to our analysis of appellant's claim.[1]

■ Our analysis is to be guided by the traditional test of mere rationality. Under this test, if the purported classification is a rational one, if it furthers a proper governmental purpose, and if all persons within the class thus established are treated equally, then the classification will be deemed reasonable, with no consequent violation of equal protection. We read appellant's claim as attacking only the first prong of this test, that is, that the classification is not a rational one.

■ In our consideration of this issue, we need not decide whether the presumption of

constitutionality which attaches to legislative classifications that neither yield "suspect" criteria nor deny a "fundamental right" would apply to a non-statutory classification promulgated by an executive official as an administrative act. Without the aid of any presumption, we find the inspection order in question to meet the three-pronged traditional test of equal protection.

■ At the outset we can dismiss any equal protection claim concerning the charge of possession of marijuana occurring on 19 December 1981, to which appellant pleaded guilty. We see no logical reason why the doctrine of waiver set forth in MRE 311(i), which by its terms applies to any Fourth Amendment issue raised under MRE 313, should not also apply to an equal protection issue raised under the same rule. We treat appellant's plea of guilty to the marijuana possession offense as a waiver of his right to pursue on review an equal protection attack on the inspection order as it affects that offense. He has, therefore, no standing to contest the constitutionality of the vehicle inspection procedures outlined in the order as an independent issue. We will state that, were the waiver doctrine not invoked, we would find spurious appellant's contention that his right to equal protection was abridged by the mere exclusion of officers in grade O–6 and above from the reach of the inspection. *United States v. Gauvin,* 12 M.J. 610 (N.M.C.M.R.1981). Appellant cannot logically contend that the existence or absence of this exemption could have any relation to the impact of the inspection order upon him. Furthermore, the encompassed group, all military personnel in grade O–5 and below, is so broad in relation to the total military population which could be affected that the distinction drawn is too *de minimus* in fact to even legitimize an equal protection assertion.

Our disposal by the doctrine of waiver of the issue as it affects the possession of marijuana seized incident to the vehicle inspection does not, however, dismiss from

1. Under the circumstances of this case, we do not find the penumbral "right to privacy" to be within the term "fundamental right" such that

it would require application of the strict judicial scrutiny test.

consideration that part of the inspection order which applies to pedestrians. Appellant attempts to claim a denial of equal protection based on the fact that pedestrians, all of whom are subject to inspection, are treated unequally in relation to persons entering the base via a vehicle, subject only to random selection. In applying the mere rationality test to this assertion, the question is not whether the inspection order discriminates against pedestrians, but whether it discriminates impermissibly or in an invidious manner. The government has offered a cogent and reasonable basis for not applying the random inspection criteria to pedestrians. Fewer persons enter the base as a pedestrian (approximately 150 daily) than in a vehicle (approximately 2000 daily). Considerations of security and resources, when balanced with the purpose of the inspection, render the classification distinction to be pragmatic, rational, and reasonably justified by those considerations. Appellant, who bears the burden of establishing the invalidity of the classification employed, *see United States v. Gray,* 6 M.J. 972, 973 (A.C.M.R.1979), has failed to offer evidence or logic from which it could be concluded that the discrimination drawn between pedestrians and vehicles is patently arbitrary. In light of the valid governmental purpose to be served by the order of inspection, and the reasonableness of the classifications created therein, we find no violation of appellant's right to equal protection of the laws. Accordingly, we dismiss appellant's third assignment, being without merit.

 Trial defense counsel has criticized as insufficient the convening authority's denial of appellant's request for deferral of the sentence to confinement, and cites *United States v. Brownd,* 6 M.J. 338 (C.M.A. 1979), in support of this contention. A closer reading of *Brownd* would reveal that an accused seeking deferral of confinement has a threshold burden of presenting reasons why such deferral should be approved. As appellant offered no such reasons, the duty on the convening authority to explain his denial did not mature.

In view of the supervisory authority's action which suspended appellant's punitive discharge, we will not address appellant's fourth assigned error regarding inappropriately severe punishment. After examination of the record of trial we find no other errors which would materially prejudice appellant's substantial rights. Accordingly, the findings and sentence as approved on review below are affirmed.

