UNITED STATES, Appellee,

v.

Staff Sergeant T.L. YOAKUM, SSN 571–60–0463, United States Army, Appellant.

SPCM 17541.

U. S. Army Court of Military Review.

24 Nov. 1982.

---

Colonel William G. Eckhardt, JAGC, Captain David M. England, JAGC, and Captain Paul J. Moriarty, JAGC, were on the pleadings for appellant.

Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Major Michael R. Smythers, JAGC, and Captain Richard J. Fadgen, JAGC, were on the pleadings for appellee.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Judge:

The appellant, Staff Sergeant Yoakum, was tried and convicted by a military judge sitting as a special court-martial of transfer, sale, and possession of marihuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976). The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement at hard labor for three months, and reduction to the grade of Private E–1.

On appeal to this Court, the appellant assigns four errors; in his argument of sentence appropriateness, he asks that we set aside the punitive discharge.

On 27 October 1981, Private First Class Healy, an informant, contacted the appellant about making a marihuana purchase. Arrangements for such a sale were made and on the next day, 28 October 1981, Healy, together with Acting Sergeant Flanary, a military policeman,[1] went to appellant's home to consummate the transaction. Upon their arrival, the appellant invited them in. As he did not know Flanary, the appellant asked Healy, if he—Flanary—was the one. Having received a positive reply from Healy, the appellant stated the price of the marihuana to be sold was $150.00. To that, Flanary responded that he was told the price would be only $140.00. To resolve the question of price, the appellant called his supplier and thereafter told Flanary that he could have the marihuana for $140.00, but they would have to pick it up at the Central Texas College (CTC) campus duck pond.

The appellant, Flanary, and Healy then drove in Healy's car to the CTC campus. They drove around until the appellant spotted the supplier Hudson. Eventually, the appellant entered Hudson's car, talked with him, and then got Flanary to join them in Hudson's car. Once inside, Hudson handed a plastic bag of marihuana to Flanary who in turn handed Hudson $140.00. From that

---

1. Sergeant Flanary's assistance with making the marihuana buy was requested by the Fort

Hood Criminal Investigation Division.

money, Hudson then handed the appellant a $10.00 bill with a comment "Here you are." The appellant and Flanary then joined Healy who was waiting for them in his car and proceeded to return to appellant's home. Along the way they stopped at a shoppette where the appellant bought a loaf of bread and some beer.

Flanary testified that when they arrived in front of appellant's home, the appellant told him to get in touch with Healy should he again want to buy marihuana. The appellant then asked Flanary to give him some of the just purchased marihuana for his (appellant's) personal use. From the plastic bag handed him by Flanary, the appellant took some marihuana and put it in his cigarette pack.

■ In his first assignment of error, the appellant contends that the evidence is insufficient to rebut his defense of agency. While he admits to having played the crucial role in matching up the buyer with the seller, he claims that such activities as getting in touch with the supplier, making the arrangements, negotiating a lower price, going with the buyers to the prearranged meeting place, and introducing the supplier Hudson to Flanary, were all undertaken on behalf of the buyers.[2] As to the $10.00 bill he received from Hudson out of the money Flanary paid for the marihuana, he claims it to have been a loan which he has since repaid. As a trier of fact, the military judge did not believe appellant's claim; we do not believe it either. The evidence of record convinces us beyond any reasonable doubt that the appellant was not acting as an agent for the buyers, but rather was acting for himself and his supplier, Hudson.

■ Secondly, since the marihuana appellant was convicted of possessing came from a law enforcement official's "baggie," appellant contends that possession of marihuana so acquired is not unlawful. Consequently, as the Government failed to establish the element of unlawfulness, the conviction of that offense cannot stand.[3] Law enforcement agents may lawfully participate in drug transactions in the performance of their duties. However, the possession of marihuana obtained by another from a law enforcement agent is not rendered lawful merely because it is obtained from such an official who is acting within the scope of his official duties. *See United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). Accordingly, we find this contention to be without merit.

■ Thirdly, the appellant claims that the military judge erred by failing to either abate the proceedings or refer to the convening authority for his reconsideration a defense request that the marihuana supplier Hudson be immunized and compelled to testify.

Prior to trial, trial defense counsel called Hudson into his office to interview him. Hudson indicated "that he had an attorney downtown" and that he had been advised "not to make any other statements concerning the case." Counsel thereupon, requested that the convening authority immunize Hudson as Hudson was the individual who actually transferred the marihuana, and consequently his testimony was material and crucial to appellant's defense. The con-

---

2. On cross-examination the trial counsel asked the appellant:

> What made you think that if you assisted PFC Healy and this person you had never met before, in buying marihuana from someone that you knew was a spec four in the military, that they would remain quiet and you would not have your career threatened?

The appellant replied:

> Well, ma'am. That's a hard question to answer, but I will answer it the best way I can. If someone comes to me and needs some help, whether it be financially or any other wise (sic), I try to help them. That's part of my job.

3. Appellant's reliance on this Court's decision in *United States v. Jefferson,* 13 M.J. 779 (ACMR 1982), is misplaced. That case stands for the proposition that an accused may not be convicted as an aider and abettor to the possession of drugs held by law enforcement officials in their official capacity. Such is not the case here. The appellant personally took the marihuana in question out of the "baggie" handed to him by law officer Flanary and put it in his own cigarette pack. Once he did that, he possessed the marihuana in his own right and not as an aider and abettor.

vening authority denied the request on the grounds that it failed to set forth the materiality and the exculpatory nature of Hudson's testimony and because the Government was in the process of preferring charges arising out of the same transaction against Hudson and as such had a strong interest against granting him immunity. At trial, the defense counsel argued that *IF* Hudson would take the stand and *IF* he would testify that the appellant was not his agent, and received nothing for his activity, such testimony would have a crucial impact on the fact-finder's decision whether or not the appellant was the sole agent of the buyer (emphasis supplied). In our view, the command had a legitimate and strong countervailing interest in going forward with the trial of Hudson and the tangential offer of proof of Hudson's testimony fell far short of exculpating the appellant as the agent of the supplier Hudson. *United States v. Villines,* 13 M.J. 46 (CMA 1982). We conclude the military judge acted within his discretion in denying appellant's motions.

■ Lastly, the appellant contends that the military judge erred by failing to dismiss Specification 1 (transfer of marihuana) for being multiplicious with Specification 2 (sale of marihuana). In our view, the appellant waived the issue, if any. *United States v. Goode,* 1 M.J. 3 (CMA 1975); *United States v. Huggins,* 12 M.J. 657 (ACMR 1981). The military judge specifically announced that, for the purposes of sentencing, he considered the Specifications of the Charge to be multiplicious with one another. The lenient sentence imposed militates against any possibility of prejudice.

■ Considering appellant's contention that he should have been allowed to leave the service without the burden of a punitive discharge, we are not unmindful of his almost sixteen years of military service. Like the convening authority who denied appellant's petition for clemency, we feel that the needs of good order and discipline and the nature of the offenses of which he was convicted militate against our setting aside the punitive discharge. The debilitating effects of drug abuse in general pose a serious problem to the readiness of the military force. *See United States v. Trottier,* 9 M.J. 337, 345 (CMA 1980); *United States v. Brooks,* 14 M.J. 813 (ACMR 1982). When drugs are sold to soldiers by their noncommissioned officers, the gravity of such misconduct is even more ominous. If one element of the noncommissioned officer's duties is to lead by example,[4] the example appellant set for his men the Army and society could well do without. In our opinion the imposition and approval of a bad-conduct discharge was eminently appropriate.

The findings of guilty and the sentence are affirmed.

Senior Judge MILLER and Judge BADAMI concur.

4. The Army Noncommissioned Officer Guide, FM 22–600–20, March 1980, at 2.