UNITED STATES

v.

**Airman First Class Billy W. O'BRYAN, Jr., FR 267–75–6097, United States Air Force.**

ACM S25948.

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 Jan. 1983.

Decided 18 Aug. 1983.

Appellate Counsel for the Accused: Colonel George R. Stevens and Major William H. Lamb.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Major Michael J. Hoover.

Before HODGSON, FORAY and MILLER, Appellate Military Judges.

DECISION

HODGSON, Chief Judge:

The paramount issue before us is whether the military judge erred in refusing to grant immunity to a defense witness whom the trial defense counsel claimed had testimony which would exonerate the accused of any knowing possession of drugs.

The individual whose testimony was excluded at trial was Airman David Whalen who was being administratively separated from the Air Force for misconduct. On 18 January 1983, in a request to the Commander, 22d Air Force, seeking immunity for Whalen, the accused's counsel averred:

Airman Whalen's counsel has advised me that his client, if called to the stand, will take his Article 31 rights and refuse to testify. Through representations of the accused, Chaplain Kenneth Truslow, and Mr. Pat Clancy, a civilian attorney, the defense contends that Airman Whalen has information which will exonerate the accused of any knowing possession of drugs.

The next day trial defense counsel submitted additional information to support the immunity request which stated:

I have interviewed an established member of the California Bar, Mr. Pat Clancy, who has had a conversation with Airman Whalen outside the scope of an attorney-client privilege. Through Mr. Clancy, I have learned that Airman Whalen can testify that the items containing residue found in Airman O'Bryan's room belonged to Airman Whalen, and that Airman O'Bryan did not know they were in his room. This information is clearly exculpatory as it pertains to Airman O'Bryan.

On 20 January, the Commander, 22d Air Force,[1] denied the request because Whalen was currently awaiting an administrative discharge for misconduct.

Trial defense counsel renewed the request before the trial judge and again represented that in a conversation with an attorney, Patrick Clancy, Whalen said, "The stuff in the brown bag in the locker belonged to me," and the accused stated, "I didn't know it was there." After hearing extensive argument on the issue, the trial judge denied the motion ruling that the convening authority had not abused his discretion in refusing to grant immunity.

On the merits the government established that on 9 October 1982, a properly authorized search of the accused's room disclosed marijuana residue in an ashtray and marijuana and cocaine residue on items found[2] in a brown paper bag in the accused's wall locker. The accused's roommate, who was present during the search, testified that he did not use or possess marijuana and the substance found in the ashtray was not his.

The accused offered the testimony of Patrick Clancy, a member of the California bar. Mr. Clancy testified he had spoken with the accused and Whalen concerning his (Clancy's) possible representation of the accused. During this conversation Whalen stated ". . . he was going to be out of the Air Force by the time [the accused's] trial commenced and that he would then be able to come in and testify for [the accused]." When Clancy suggested that this is ". . . going to sound like some buddy just doing a favor for his friend," Whalen stated, "The stuff in the bag was mine." Whalen never mentioned placing any material in an ashtray, and nothing was said whether the accused knew that Whalen had placed the items in the wall locker. In mid-November 1982, Whalen told the Commander, 1901st Communications Group, that he had information that the cocaine did not belong to the accused. He declined to release the information then, but indicated he would do so in court.[3] With the evidence in this posture the accused was convicted of wrongfully possessing marijuana and cocaine in violation of Article 134, UCMJ, 10 U.S.C. § 934. He was sentenced to a bad conduct discharge and reduction to airman basic.

Subsequent to the accused's trial and after Whalen had been administratively discharged, Whalen submitted an affidavit stating that the marijuana and cocaine paraphernalia was his and he had placed it in the wall locker without the accused's knowledge. He wanted to testify at the accused's trial but declined to do so on advice of counsel. Had he been given immunity he would have testified; however, without it, he feared he would face court-

1. As a general court-martial convening authority, the Commander, 22d Air Force could grant immunity. Paragraph 68h, M.C.M., 1969 (Rev.)

2. These items included a wooden pipe, an amber glass vial, two plastic straw segments and a commercially manufactured kit labeled the "NO STRAIN SNOW STRAIN."

3. The military judge admitted the testimony of Clancy and 1901st Communication Group commander pursuant to Mil.R.Evid. 804(b)(3) which provides:

Rule 804. *Hearsay Exceptions; Declarant Unavailable*

\* \* \* \* \* \*

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness.

\* \* \* \* \* \*

(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

The military judge accepted the accused's averment that Whalen, if called as a witness, would refuse to testify. In *United States v. Hogan,* 16 M.J. 549 (A.F.C.M.R.1983) we discussed the steps to be taken before a witness is deemed "unavailability." We commend the reading of that decision to all trial judges.

martial charges for the possession of marijuana and cocaine paraphernalia.

At no time did Whalen ever assert that the marijuana found in the ashtray was his (Specification 1 of the Charge). Accordingly, Whalen's proffered testimony was not "clearly exculpatory" with regard to this allegation. The accused's roommate categorically denied that the marijuana was his. That the accused had knowledge that the marijuana was in the ashtray and that it was his, was a question of fact. *United States v. Alvarez*, 10 U.S.C.M.A. 24, 27 C.M.R. 98 (C.M.A.1958); *United States v. Meyers*, 20 U.S.C.M.A. 269, 43 C.M.R. 109 (1971). We are convinced beyond a reasonable doubt, as were the triers of fact, that the accused possessed the marijuana found in the ashtray, and the cocaine and marijuana discovered in his wall locker. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Robinson*, 14 M.J. 903 (N.M.C.M.R. 1982); *see also United States v. Neely*, 47 C.M.R. 780 (A.F.C.M.R.1973).

■ We turn now to the question of whether Whalen should have been granted immunity. The law is clear that a general court-martial convening authority *may* grant immunity to a defense witness. *United States v. Villines*, 13 M.J. 46 (C.M.A. 1982). However, this doctrine has narrow application. Immunity will be denied a defense witness if the profferred testimony is found to be 1) ambiguous, 2) not clearly exculpatory, 3) non-essential, 4) cumulative, or 5) relating only to credibility of government witnesses, or 6) there is a strong governmental interest against granting immunity. *United States v. Villines, supra; United States v. Yoakum*, 14 M.J. 959 (A.C. M.R.1982); *Virgin Islands v. Smith*, 615 F.2d 964 (3rd Cir.1980); *United States v. Steele*, 685 F.2d 793 (3rd Cir.1982). In *Villines, supra*, at 55, Judge Fletcher observed:

> [S]imply because prosecutorial authorities are often given unique powers, not available to a criminal defendant, to protect the public interest through effective law enforcement, the latter is not constitutionally denied a fair trial.

■ In our view the military judge did not abuse his discretion in refusing to grant immunity to Whalen. *See United States v. Martin*, 9 M.J. 731 (N.M.C.M.R.1980). Whalen's pretrial admission that the drug paraphernalia was "his" is not clearly exculpatory as ownership by one person does not exclude possession by another. Possession embodies the idea of physical control or dominion over property. It is not synonymous with ownership or legal title, which can, but does not necessarily, include possession. *United States v. Meyers, supra; United States v. Aroyian*, 16 U.S.C.M.A. 333, 36 C.M.R. 489 (1966). The circumstances discussed above lead us to conclude that the accused was not denied a fair trial. *United States v. Villines, supra.*

The remaining assigned error has been examined and is resolved adversely to the accused. *United States v. Bacon*, 12 M.J. 489 (C.M.A.1982); *United States v. Morris*, 13 M.J. 666 (A.F.C.M.R.1982). The findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, concurs.

MILLER, Judge (concurring in the result):

Contrary to the views expressed by the Chief Judge, there is little doubt in my mind that had Airman Whalen been granted immunity, he would have explicitly testified that he, himself, had committed all the offenses with which the accused was charged and that the accused had no knowledge, whatsoever, regarding his commission of any of these offenses. Such an "in-court," totally exonerating confession, was: (1) clearly implied by the pretrial information that the accused's counsel provided the convening authority in support of the instant immunity request; (2) supported by Whalen's piecemeal admissions to Patrick Clancy which Clancy testified to at trial; and (3) confirmed by Whalen's posttrial affidavit which he penned following the *de facto* immunity that resulted from his discharge from the service.

Nevertheless, I concur with the Chief Judge's conclusion that the defense's request to immunize Airman Whalen in exchange for his testimony was properly denied.

Stated quite simply, a contrary holding would likely render future convictions for crimes committed in the absence of eyewitnesses, virtually impossible. Any sole offender, A, would have only to find an individual, B, willing to confess to A's crime after being granted immunity in order to plant a reasonable doubt as to A's commission of the crime in a jury's mind. A would be forever acquitted of the offense (double jeopardy) and B would be forever immune from punishment for the offense (particularly, when B actually never committed the crime). Assuming B never changes his story in the future, he is also immunized from any future perjury conviction, as the two witnesses necessary for such a conviction would not exist.

Since, in my opinion, it would be the height of a naivete to presume that such an obvious invitation to avoid criminal conviction for offenses might be ignored by criminal elements within our community, any contrary holding, regardless of its theoretical appeal, would, absent substantial changes in our basic perceptions of criminal justice, likely sound the pragmatic death knell to the effectiveness of our criminal justice system. It is difficult to imagine a stronger governmental interest against granting immunity. I rest my decision upon this governmental interest.

The findings and the sentence in this case should be affirmed.