**UNITED STATES, Appellee,**

v.

**Robert ZAYAS, Specialist Four, U.S. Army, Appellant.**

No. 52,621.

CM 445996.

U.S. Court of Military Appeals.

June 8, 1987.

For Appellant: *Captain David L. Carrier* (argued); *Colonel Brooks B. La Grua, Lieutenant Colonel Arthur L. Hunt, Major Stephen R. Dooley* (on brief).

For appellee: *Major Byron J. Braun* (argued); *Colonel James Kucera* and (on brief); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Andrew D. Stewart.*

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial comprised of officer and enlisted members convicted appellant, contrary to his pleas, of wrongful destruction of military property, drunk driving, and involuntary manslaughter, in violation of Articles 108, 111, and 119, Uniform Code of Military Justice, 10 U.S.C.

§§ 908, 911, and 919, respectively. Thereafter, the court sentenced appellant to a bad-conduct discharge and confinement for 1 year. The convening authority approved these results, and the Court of Military Review affirmed in an unpublished memorandum opinion.

Two issues are presented in this appeal. 21 M.J. 281. First, appellant asks whether the military judge erred by denying a defense motion at trial to abate the proceedings pending the grant of testimonial immunity to a prospective defense witness to whom the convening authority had declined to offer such immunity. As to this question, we conclude that the military judge erred and that the case should be remanded for an opportunity to hear the witness in question. Second, appellant urges that the allegations of drunk driving and involuntary manslaughter by culpable negligence were multiplicious for findings, so that the military judge erred in not dismissing one of those charges—a contention which we determine has no merit.

I

A

Shortly before 1:00 a.m. on the morning of October 22, 1983, Specialist Four Kenneth Osburn, a military policeman then on duty at the main gate of Fort Huachuca, Arizona, saw an oriental male enter the gate, walking a bicycle. A few minutes later, a car approached from outside the gate, and Osburn stopped the vehicle to check the driver's identification. Looking into the car, Osburn recognized the driver as Specialist Zayas, whom he knew through his duties. Also, he saw another man slumped over in the passenger seat. After confirming appellant's identity, Osburn permitted the car to pass onto the post. A moment or two later, the lights at the main gate went black.

About 1:00 a.m. Staff Sergeant Garland Gross, another military policeman on duty, heard a crash and the sound of electricity shorting. He went to investigate and, about 150 yards from the main gate, found a Monte Carlo next to a downed utility pole, with appellant standing outside the open driver's door of the car. He then discovered Private First Class Song Wu Chon's body up the road, where it was lying in a two-foot-wide pool of blood. Returning to the car, Gross found Specialist Gomez trapped in the passenger compartment and complaining of back pains.

Sergeant Christopher Griffin, the MP patrol supervisor during this shift, responded to a call about the accident. When he arrived, he assisted Gross in rendering cardiopulmonary resuscitation (CPR) to the apparently lifeless Chon. After the victim had been evacuated, Griffin approached Gomez who, by then, had been freed from the car and was lying on its hood. Gomez was complaining of back pains and was very excited and partially incoherent. He told Griffin that he had been driving the car and had been unable to avoid the victim. While ministering to Gomez, Griffin also saw and spoke with appellant. He noted that appellant's eyes were red; his speech was slurred; and his breath had a strong odor of alcohol.

The critical issue at trial was who had been driving the car—which was owned by Gomez—at the time of its fatal encounter with Private Chon. In addition to the evidence already recited, the testimony of two accident investigators was received. The first, Sergeant William Ladd, had examined the wrecked vehicle and concluded that the passenger could not have been thrown free and that the driver could not have been thrown into the passenger seat—both of which conclusions supported the prosecution's theory that appellant was the driver and that Gomez was, at the time, riding in the passenger seat. The second, Clifford McCarter, was an expert in accident reconstruction who had been hired by the defense. He testified that, after reviewing the accident and the injuries to the car's occupants, he, too, was confident that appellant had been driving at the time of the accident.

During the defense presentation of its case, Zayas testified that he had not been

the driver on the night in question. To support his testimony, the defense wished to obtain the testimony of Specialist Gomez who had asserted at the accident scene that, indeed, he had been the driver.

There were difficulties, however, with obtaining Gomez' testimony. After the investigation of the incident, charges had been preferred against both appellant and Gomez; and the convening authority had referred both sets of charges to general courts-martial. At the time of appellant's trial, Gomez had yet to be tried; and up to then, he had refused to be interviewed. Moreover, Gomez' defense counsel had indicated that, if his client were called as a witness at Zayas' trial, he would assert his privilege against self-incrimination.

Accordingly, before trial began, defense counsel asked the convening authority to bestow testimonial immunity on Gomez, so that he could be compelled to testify in Zayas' behalf. Notwithstanding defense counsel's representation that Gomez' testimony was expected to be exculpatory as to appellant, based on his on-the-scene acknowledgment of having been the driver, and notwithstanding that Gomez had indicated he would invoke his privilege if called to testify, the convening authority denied this request, simply pointing to the pending charges against Gomez at his own general court-martial.

In due course, defense counsel asked the military judge for help in obtaining this important testimony. Specifically, he asked the judge either to grant testimonial immunity to Gomez or, in the alternative, to either abate the proceedings or continue the case until immunity was granted Gomez or until he no longer could claim his privilege against self-incrimination. In opposition, the Government argued, first, that immunizing a defense witness presented too many possibilities for perjury and, second, that the convening authority had sole discretion in this area and "[t]he Government should have the decision on what order it wants to try the cases." Trial counsel, however, made no suggestion that granting testimonial immunity would pose

any specific or general problems in its anticipated subsequent prosecution of Gomez. Ultimately, the military judge denied the defense request without explanation.

The Court of Military Review, in turn, affirmed the judge's ruling. In its unpublished memorandum opinion, the lower court pointed out that, in *United States v. Smith*, 17 M.J. 994 (A.C.M.R.1984), it had adopted the rule of *Government of Virgin Islands v. Smith*, 615 F.2d 964 (3d Cir. 1980), as to when "a 'judicial' grant of immunity is available to a defense witness under the due process right to present an effective defense." Unpub. op. at 2 (footnote omitted). Two instances are appropriate for such treatment, the court said: The first is when "the Government engages in prosecutorial misconduct intended to disrupt the factfinding process," citing 615 F.2d at 968; the second is when "the proffered testimony is clearly exculpatory, the testimony is essential, and no strong governmental interests countervail against the grant." Unpub. op. at 2.

As to application of the second theory—the one most frequently invoked—the court quoted from the Third Circuit's opinion, 615 F.2d at 972:

Immunity will be denied if the proffered testimony is found to be ambiguous, not clearly exculpatory, or if it is found to relate only to the credibility of the Government's witness.

Unpub. op. at 2. In this light, the court concluded that, inasmuch as Sergeant Griffin had testified as to Gomez' statements made at the accident scene, "Gomez' proffered testimony would have been cumulative with that of Sergeant Griffin." *Id.*

B

This Court's landmark case on the issue of testimonial immunity for defense witnesses—a case not cited by the lower court—is *United States v. Villines*, 13 M.J. 46 (C.M.A.1982). There, each Judge took the occasion to write his separate views on this question.

Judge Fletcher in his lead opinion divided the question into three parts. First, he

concluded that the convening authority may grant testimonial immunity and that, determining in a particular case whether to do so, "[h]e must decide whether it is in the interests of effective law enforcement and his command to grant the immunity request." *Id.* at 54 (footnote omitted). Second, Judge Fletcher opined that the military judge subsequently can review the convening authority's decision for an abuse of his discretion, as well as to ensure that prosecutorial authorities do not act or refuse to act "with the deliberate intention of distorting the judicial fact-finding process." *Id.* at 55. Finally, even if the military judge concludes that the convening authority acted properly in denying a defense-requested immunity grant, he still must decide whether the accused's right to a fair trial includes the questioned witness' testimony. Judge Fletcher noted that, "in making such a claim, appellant has an affirmative and heavy burden to establish that the prosecutorial authorities in the exercise of these powers denied him clearly exculpatory evidence." *Id.*, citing *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Government of Virgin Islands v. Smith, supra* at 970–73. Judge Fletcher concluded that Villines had not carried this burden, so no relief was appropriate.

In his opinion concurring in the result, Judge Cook concluded that the power of granting immunity is vested solely in the executive and, accordingly, the convening authority's decision in this regard is unreviewable by the courts. Nonetheless, Judge Cook asserted that, if a military judge determines that an accused's due-

process and fair-trial rights are threatened by the absence of "material, exculpatory testimony" from a particular witness invoking his self-incrimination shield, a variety of remedies are available to the judge to ensure the accused a fair trial, such as continuances until such time as the witness no longer can invoke his privilege. *Id.* at 57. Because Villines had not requested a continuance, Judge Cook made no further inquiry into the matter.

In a dissenting opinion Chief Judge Everett concluded that both the convening authority and the military judge are empowered to grant testimonial immunity. In his view, the military judge, in making such a decision, should be especially swayed by well-founded representations that "a grant of testimonial immunity would probably impede a prospective prosecution of the immunized witness." *Id.* at 63–64. However, bald assertions to this effect will not be persuasive. In such an instance, the military judge must give careful consideration to the accused's due-process and fair-trial rights. Thus, he should consider "the seriousness of the offense being tried as compared to the offenses for which the witness might be prosecuted" and the likelihood that the immunized testimony would "be material and clearly exculpatory." *Id.* at 63 n.8.

■ All three of the opinions in *Villines* suggest that, when a military judge is confronted with a proffer of clearly exculpatory testimony of a witness who will invoke his privilege against self-incrimination if called to testify, he cannot sit idly by.[1]

---

1. R.C.M. 704(e), Manual for Courts-Martial, United States, 1984, which was not in effect at the time of this trial, now provides that, when a defense request for testimonial immunity "has been denied" by the convening authority and is renewed before the military judge, the judge may

   grant appropriate relief directing that either an appropriate convening authority grant testimonial immunity to a defense witness or, as to the affected charges and specifications, the proceedings against the accused be abated, upon findings that:

   (1) The witness' testimony would be of such central importance to the defense case that it is essential to a fair trial; and
   (2) The witness intends to invoke the right against self-incrimination to the extent permitted by law if called to testify.
   The drafters' analysis of this rule states:
   This subsection is based on *United States v. Villines, supra* [13 M.J. 46 (C.M.A.1982)]. Although there was no majority opinion in that case, each judge recognized the problem of the need to immunize defense witnesses under some circumstances, and each suggested different possible solutions. The rule ad-

When such a proffer is made and the Government does not make a particular and substantive contention that testimonial immunity will jeopardize a contemplated future prosecution of the witness, consideration of the accused's due-process and fair-trial rights requires the military judge to fashion an appropriate remedy. Simply denying an accused the use of such testimony under these circumstances is fundamental error.

This is precisely the situation in the case at bar. Both the defense proffer and Sergeant Griffin's testimony established that Gomez' anticipated testimony would have been clearly exculpatory as to Zayas because it would have exonerated him entirely. Moreover, neither the convening authority in his earlier denial nor trial counsel in resisting the defense trial motion even suggested—much less supported the suggestion—that subsequent prosecution of Gomez would be jeopardized by granting him testimonial immunity to testify at appellant's trial. Even if such a risk were urged and were well-founded, a majority of the Court in *Villines* would still require the military judge to take some affirmative action to protect the accused's due-process and fair-trial rights which would be undermined by outright denial of the use of Gomez' clearly exculpatory testimony.

■ Nonetheless, the Government contends that appellant could not have been prejudiced by this denial in light of the substantial prosecution evidence that appellant, not Gomez, was driving the car at the time of the fatal incident and the fact that Sergeant Griffin's testimony included Gomez' accident-scene statement that he, not Zayas, was driving, so that Gomez' testimony would have been cumulative. We disagree.

The Government's evidence against appellant was, indeed, substantial. On the other hand, only appellant and Gomez know for sure who was driving that night; and we decline to speculate as to what would have been the impact on the court members of forthright and unshaken live testimony by Gomez—as opposed to the second-hand testimony of Sergeant Griffin—that the driver was Gomez, not Zayas.

■ The judge's denial of the defense motion precludes us from determining precisely what would have been the substance and the quality of Gomez' actual testimony. Under these circumstances, we conclude that a *DuBay*[2] hearing now is appropriate at which such testimony can be obtained under a grant of testimonial immunity[3] and evaluated.

## II

The specification under the drunk-driving charge alleged that, at Fort Huachuca on or about 1:05 a.m. on October 22, 1983, Zayas "operate[d] a motor vehicle, to wit: a passenger car, while drunk." The involuntary manslaughter specification alleged that, at the same time and place, Zayas "by culpable negligence unlawfully kill[ed] Private First Class Song Wu Chon by striking him with a motor vehicle, to wit: a passenger car."

■ In support of his argument in this Court that these specifications are multiplicious for findings, appellant cites *United States v. Mallery*, 14 M.J. 212 (C.M.A.1982) (summary disposition). There, we found "that the allegations of intoxication, in the specification ... which charges causing the death of another in the operation of a motor vehicle duplicate those of the specification ... which charges the operation of a vehicle while drunk, and [that] the evidence

dresses these concerns and provides a mechanism to deal with them. Note that the military judge is not empowered to immunize a witness. If the military judge finds that a grant of immunity is essential to a fair trial, the military judge will abate the proceedings unless immunity is granted by an appropriate convening authority.
App. 21, Manual, *supra.*

2. *United States v. DuBay,* 17 U.S.C.M.A. 147, 37 C.M.R. 411 (1967).

3. Before the witness testifies, the prosecution may advise the military judge of the evidence against him so that an allegation of tainted evidence is avoided.

establishes the latter offense as lesser included in the former." In the case now before us, however, there is no allegation of intoxication as the basis of the culpable negligence causing the victim's death. Because the manslaughter specification did not allege intoxication as the act of negligence and there was no defense motion to make that specification more specific in that regard, the issue of multiplication of findings is not raised. *United States v. Holt*, 16 M.J. 393, 394 (C.M.A.1983).

### III

The decision of the United States Army Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Army for submission to a general court-martial convening authority, who may refer the record to a general court-martial for a limited hearing on the matter in issue or, if he determines in his discretion that further proceedings are impracticable, dismiss the charges and forward an authenticated copy of his dismissal action to this Court. If a general court-martial is convened, the military judge, under the provisions of Article 39(a), UCMJ, 10 U.S.C. § 839(a), will conduct the limited hearing. At the conclusion of the proceedings, he will enter findings of fact and conclusions of law and then return the original record and a verbatim transcript of the hearing directly to this Court.

Judge SULLIVAN concurs.

COX, Judge (dissenting):

I respectfully dissent for several reasons.

First, I agree with the view expressed by then Judge William H. Cook in *United States v. Villines*, 13 M.J. 46, 56 (C.M.A. 1982) (concurring in the result), that the decision to grant transactional or use immunity should be left in the hands of the Executive Branch. When the Government seeks to go forward with prosecution of an individual who has been granted use immunity, "the prosecution [has] the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source

wholly independent of the compelled testimony." *Kastigar v. United States*, 406 U.S. 441, 460, 92 S.Ct. 1653, 1665, 32 L.Ed.2d 212 (1972). As a result of this heavy burden,

> only the exceptional case can be tried after a grant of testimonial immunity. The burden of the Government is indeed heavy—so much so that, except in rare cases, the Department of Justice has established the policy of avoiding prosecution of immunized witnesses as to matters they disclose.

*United States v. Rivera*, 1 M.J. 107, 111 n. 6 (C.M.A.1975).

I totally and unequivocally divorce myself from any suggestion by Chief Judge Everett in either this opinion or his dissent in *United States v. Villines, supra* at 62, that a military judge has the authority to grant a witness any kind of immunity. My belief has nothing to do with concern as to whether a military judge could wisely exercise discretion in this regard. Rather, I am convinced that the decision to prosecute, under what conditions, and with what evidence is an executive decision, not a judicial one. *See United States v. Pennell*, 737 F.2d 521 (6th Cir.1984), *cert. denied*, 469 U.S. 1158, 105 S.Ct. 906, 83 L.Ed.2d 921 (1985). The United States Supreme Court has exacted a high price for a grant of immunity, regardless of which governmental entity makes the grant. *Murphy v. Waterfront Commission of New York Harbor*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). Must the Government pay such a price for immunity granted over its objection? I say NO!

Moreover, an accused is not without a remedy when the Government refuses a defense request for a grant of immunity. The military judge does possess the authority, indeed is charged by his oath, to insure that the accused gets a fair and impartial trial. I agree with Chief Judge Everett, as did Judge Cook in *Villines*, that the military judge can "abate" or continue the proceedings until the privilege is lost or the Government is willing to grant immunity. This is an extraordinary remedy, however,

and should be exercised by the military judge only when the conditions set forth in R.C.M. 704(e) are clearly met.

As R.C.M. 704(e) was not in effect at the time of this trial, however, it is not controlling. I observe that even the Court of Appeals for the Third Circuit in applying the minority view espoused in *Government of Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980), has recognized that the prosecution has a reason for denying immunity to a witness whom "it may yet prosecute." *United States v. Lowell,* 649 F.2d 950, 965 (3d Cir.1981). I have been unable to find any other court that would apply such a liberal rule as we now have in R.C.M. 704(e). Be that as it may, I have no quarrel with giving the military judge some discretion to decide if a fair trial cannot be had unless a witness is immunized.

If there is any other adequate substitute in the record for the so called "immunized testimony," however, as a matter of law the testimony of the witness would not "be of such central importance to the defense case that it is essential to a fair trial." R.C.M. 704(e)(1). Certainly, I would not permit defense counsel to go on a fishing expedition, hoping upon hope that the immunized witness will make a judicial confession exonerating his client. The defense must be able to establish that the expected testimony will be clearly favorable to it. In some cases, the evidence that convinces a judge of the existence of such expected testimony will, itself, be an adequate substitute for the immunized testimony.[1]

This case is an example of what I mean. Defense counsel represented to the judge that if Gomez were given immunity he would testify that he was driving the car on the night in question. This "offer of proof" was based upon a declaration against penal interest made by Gomez shortly after the accident. Sergeant Griffin, a military policeman, testified that, after he arrived at the scene of the accident, he specifically asked Gomez, "Were you driving?" Gomez responded, "Yes, I was driving."

Assume that Gomez now takes the witness stand. He can testify to one of three things: He was driving; he was not driving; or he does not remember.[2] If he testifies that he was driving, then his testimony is not essential as it is cumulative of that of Sergeant Griffin. If he testifies that he was not driving or that he does not remember, then the testimony is not exculpatory. Because his testimony was already before the court through the testimony of the military policeman, it was no longer of "central importance."

I am also disturbed by the remedy fashioned by the majority opinion. This trial took place in March 1984, some 3 years ago. There is nothing in the record to suggest that Gomez is still in the military. If he is not, who will authorize a grant of immunity? *See* R.C.M. 704(c)(2). This may be a *Murphy v. Waterfront Commission, supra,* situation in reverse. Does the United States Court of Military Appeals have any authority to order a civilian to testify if

---

1. *But see* Mil.R.Evid. 804(b)(3) regarding exculpatory statements. *See also* S. Saltzburg, L. Schinasi, & D. Schlueter, *Military Rules of Evidence Manual* 681–82 (2d ed. 1986); 4 *Weinstein's Evidence* § 804(b)(1)[06] at 804–103.

2. Although acknowledging that "[t]he Government's evidence against appellant was, indeed, substantial," Chief Judge Everett considers it supportive of his position that "only appellant and Gomez know for sure who was driving that night." 24 M.J. at 136. That same circumstance has been persuasively portrayed as support for the government interest in denying immunity, as follows:

   Stated quite simply, a contrary holding would likely render future convictions for crimes committed in the absence of eye-witnesses, virtually impossible. Any sole offender, A, would have only to find an individual, B, willing to confess to A's crime after being granted immunity in order to plant a reasonable doubt as to A's commission of the crime in a jury's mind. A would be forever acquitted of the offense (double jeopardy) and B would be forever immune from punishment for the offense (particularly, when B actually never committed the crime). Assuming B never changes his story in the future, he is also immunized from any future perjury conviction, as the two witnesses necessary for such a conviction would not exist.

   *United States v. O'Bryan,* 16 M.J. 755, 758 (A.F. C.M.R.1983) (Miller, J., concurring in the result), *pet. denied,* 18 M.J. 16 (1984).

that civilian elects to exercise his Fifth-Amendment rights? What are we asking the military judge to accomplish in a *Du-Bay* hearing? Can the military judge order a civilian to give up his Fifth-Amendment right?

But most importantly, even if Gomez is found, agrees to testify, and testifies that on the night in question he was driving the car, that testimony is not only cumulative, but has already been found to be incredible. As concluded by the Court of Military Review, "[t]he physical evidence establishes that Gomez could not have been the driver." Unpub. op. at 3.

For these reasons, I would affirm.