**UNITED STATES, Appellee,**

v.

**Joseph T. ALSTON, Staff Sergeant, U.S. Army, Appellant.**

No. 64,407.
CM 8701560.

U.S. Court of Military Appeals.

Argued March 13, 1991.

Decided Sept. 30, 1991.

For Appellant: *Captain Alan M. Boyd* (argued); *Colonel Robert B. Kirby* (on brief); *Lieutenant Colonel Russell S. Estey.*

For Appellee: *Captain Timothy W. Lucas* (argued); *Colonel Alfred F. Arquilla, Lieutenant Colonel Daniel J. Dell'Orto, Captain Randy V. Cargill* (on brief); *Major Maria C. Fernandez.*

*Opinion of the Court*

SULLIVAN, Chief Judge:

In May, June, and July 1987, appellant was tried by a general court-martial composed of officer and enlisted members at Heidelberg, Federal Republic of Germany. Contrary to his pleas, he was convicted of wrongful distribution of hashish, wrongful possession of heroin with intent to distribute, wrongful possession and distribution of heroin (two specifications), wrongful use of heroin, and wrongful distribution of heroin, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. Appellant was sentenced to a bad-conduct discharge, confinement for 7 years, total forfeitures, and reduction to Private E-1. The convening authority approved the adjudged sentence on October 23, 1987, and the Court of Military Review affirmed that action in an unpublished opinion on January 26, 1990.

We granted review on the following issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY HOLDING THAT THE MILITARY JUDGE CORRECTLY DENIED APPELLANT'S MOTION AT TRIAL TO ABATE THE PROCEEDINGS PEND-

ING THE GRANT OF TESTIMONIAL IMMUNITY TO A PROSPECTIVE DEFENSE WITNESS TO WHOM THE CONVENING AUTHORITY HAD DECLINED TO OFFER SUCH IMMUNITY.

We hold that the Court of Military Review did not err in sustaining the military judge's denial of the defense abatement motion. *United States v. Zayas*, 24 MJ 132 (CMA 1987); *United States v. Villines*, 13 MJ 46 (CMA 1982). *See* RCM 704, Manual for Courts–Martial, United States, 1984.

The chief prosecution witness against appellant on the above offenses was Private (formerly Sergeant) Linda Hamilton. She had made a pretrial statement accusing appellant of engaging in drug transactions and drug use with her at Sergeant Venus Green's apartment. Despite her assertion of her Article 31, UCMJ, 10 USC § 831, rights at appellant's pretrial investigation under Article 32, UCMJ, 10 USC § 832, she later was interviewed by Army Criminal Investigation Command agents and made similar allegations about appellant and other persons in the command. A transcript of this interview was provided to the defense. Finally, prior to trial, defense counsel was permitted to interview Private Hamilton about her accusatory statements.

As noted above, some of the drug transactions reported by Private Hamilton purportedly took place at the apartment of Sergeant Venus Green. Sergeant Green also made a pretrial statement to military investigators concerning appellant's activities in her apartment. According to that statement:

I wish to make the following statement describing my knowledge of the activities of SSG Joe ALSTON. I arrived in Heidelberg, Germany on 22 June 83 and I have been stationed here since. I first met ALSTON about April 86 right before I went to the field. I went to S2–26th, Support Grp, Patton Bks to gets some items needed for the field and that's where I met ALSTON. Me and ALSTON became good friends after that. Between Apr 86 and Aug 86 ALSTON visited me frequently at my off post address located at 25 Muhlstr, Nussloch, GE. ALSTON did not reside with me nor did he spend the night[;] he did, however, stay late on a few occasions. In Aug 86 I attended PLDC so I did not see ALSTON during that month. When I returned from PLDC ALSTON'S girlfriend had come from the states so I did not see ALSTON as much[;] he still came by but not as much.

Q. Did ALSTON have access to your residence?

A. No, and he did not have a key.

Q. Was ALSTON ever at your residence when you were not there?

A. Yes.

Q. Can you elaborate further on this?

A. Well, there was a couple of occasions when I have given ALSTON the key to my house during the day to go pick up something for me that I had forgot, also once or twice during the evening I have left to go to the store and he stayed at my apartment.

Q. Are you saying that these are the only occasions ALSTON has been at your apt when you weren't there?

A. During the Jun–Jul 86 time frame I was attending school on Patton Bks[;] this was on Tuesday and Thursday nights from about 1845 until about 2100. On a few occasions ALSTON has met me after work or caught me at my residence prior to going to class and I would let him wait inside my apartment until I returned from school.

Q. When ALSTON was at your residence did he have any visitors?

A. Not specifically for him, people that came by knew me too.

Q. Who were some of these people?

A. Pam MCDOWELL, Debby THOMAS, Linda HAMILTON, Renee EBB and her husband-I do not know his first name.

Q. What was your relationship to these people?

A. They were all my friends as well as ALSTON's, but HAMILTON and MCDOWELL are not my friends anymore because they were always lying to me and acting sneaky.

Q. Concerning MCDOWELL what can you tell me about her?

A. She is an E–5 stationed at 43rd Signal Bn, I stopped socializing with her about the middle of last year not sure what month, but she started acting kind of strange[;] she never had any money. She would borrow money off me and never pay it back.

Q. What can you tell me about HAMILTON?

A. She is an E–5, she worked at SGS and then I think she moved over to the hospital[.] I stopped socializing with her about the middle of last year[.]

Q. What can you tell me about Renee EBB and her husband?

A. Renee EBB works at the hospital here and is an E–4[;] her husband used to work at CIF.

Q. Concerning the people that I mentioned earlier when they visited you and ALSTON at your apt were they physically in your presence the whole time?

A. I would say yes, other than somebody leaving my presence to get something to drink or go to the bathroom nothing that I would consider out of the ordinary.

Q. *Do you have any knowledge of ALSTON's illegal drug activities?*

A. *No.*

Q. *Do you have any knowledge of the individuals I mentioned earlier buying drugs from ALSTON out of your residence?*

A. *No.*

Q. When the individuals that I mentioned earlier in this statement came by your apt did they stay for long periods of time or was it in and out?

A. I would say both, when they only stayed for a short period of time it was because I would have to go somewhere.

Q. When ALSTON was in your apt while you were gone, when you came home was there ever anybody there?

A. No.

Q. Earlier you mentioned ALSTON having a girlfriend come to Germany from the states. What can you tell me about her?

A. I don't know much about her other than her first name being Michelle and she is either an E–4 or E–5 stationed in Darmstadt[.] As far as I know they are still seeing each other.

Q. Is there anything else you can tell me about ALSTON?

A. No.

Q. What is ALSTON'S full name?

A. SSG Joe ALSTON from the 26th Support Grp.

Q. Is there anything you wish to add to this statement?

A. No.

(Emphasis added.)

Private Hamilton herself was court-martialed on February 3, 1987, and she could not subsequently assert her right against self-incrimination at appellant's trial. Sergeant Venus Green was not offered immunity by the command, and her counsel refused to permit appellant's counsel to interview her prior to trial without it. Sergeant Green's counsel did assert that she would testify in accordance with her pretrial statement to CID if immunity was granted.

Defense counsel at this court-martial made a motion for appropriate relief in the form of a request for pretrial access to a potential witness, Sergeant Venus Green. He asserted or implied that access could be secured by the convening authority's granting his earlier submitted request for testimonial immunity for Sergeant Green. In the alternative, he requested that the judge prohibit Private Hamilton, the chief government witness, from testifying against him or abate these court-martial proceedings.

Defense counsel articulated the basis for his request as follows:

Trial Counsel knows that Private Hamilton is testifying or has made statements to the effect of (1) that on numerous occasions she was at Venus Green's apartment; (2) that Venus Green observed the accused distributing heroin; (3) that Venus Green observed the accused and Hamilton using heroin.

Trial Counsel also knows that Hamilton asserts that she obtained heroin from Venus Green, and gave Venus Green money, and that heroin was supposed to be coming from the accused, Sergeant Alston; and that the money was supposed to go to the accused, Sergeant Alston. So when the Government argues to you that there is no indication for us to expect that access to that witness would make evidence available to the Defense which would support its position in light of Hamilton's assertion, in light of Green's assertion, that she has no knowledge of those things that Hamilton asserts occurred is just absolutely absurd.

And, once again, we're not talking about putting the witness on the stand. We're talking about access. Information relating to the charges that are coming before the court. And the key to that access is in the hands of the prosecution.

\* \* \*

Your Honor, it is the Defense's position that immunity is what gets the story which may be harmful to the Defense, or it may be helpful to the Defense. We have an indication that it is going to be helpful. We don't know. We haven't been able to speak to that witness. The Government controls the situation.

The military judge denied that motion for appropriate relief, stating:

In regard to the motion for appropriate relief involving the expected testimony of Sergeant Venus Green, which motion requests this court to direct the Convening Authority to grant Sergeant Green testimonial immunity, or prohibit Sergeant Hamilton from testifying, or abate the proceedings in regard to those charges reflected by her testimony, the motion is denied.

In my opinion, first, a denial of any drug involvement involving her and Sergeant Alston or Sergeant Hamilton, as contained in Appellate Exhibit I, is certainly not incriminating.

Furthermore, a general denial by her is not, in my opinion, clearly exculpatory of Sergeant Alston within the meaning of *United States vs. Zayas*, 24 MJ 132, and is not therefore of such importance to the defense case that it is essential for a fair trial in accordance with Rule for Courts–Martial 704(e)(1).

----------

▮ The object of appellant's motion for appropriate relief was to make a potential witness, Sergeant Green, submit to a defense pretrial interview. *See generally* RCM 701(e). We note, however, that a potential witness at a criminal trial cannot normally be required to submit to a pretrial interview for either side. *See United States v. Arboleda*, 929 F.2d 858, 867–68 (1st Cir.1991); *United States v. Bennett*, 928 F.2d 1548, 1553–54 (11th Cir.1991). Moreover, Sergeant Green's refusal to be interviewed by the defense prior to appellant's court-martial resulted from her own counsel's advice concerning related criminal charges. There was no hint that these charges were preferred by the command to prevent this witness from cooperating with appellant's defense. *See United States v. Morris*, 24 MJ 93 (CMA 1987). *Cf. United States v. Irwin*, 30 MJ 87 (CMA 1990). Finally, to the extent that only "interview" immunity was sought by the defense, it exceeds the scope of RCM 704 and our prior case law authorizing grants of immunity for trial testimony. *See United States v. Zayas, supra; United States v. Villines*, 13 MJ 46 (CMA 1982). Accordingly, neither the convening authority nor the military judge was obliged to grant this irregular and unprecedented discovery request. *See generally* Art. 49, UCMJ, 10 USC § 849.

▮ In any event, construing appellant's pretrial request and motion as seeking actual trial testimony, we nonetheless

find that no abuse of discretion or legal error occurred in their denial. *See generally* RCM 704(d) and the accompanying Discussion.[1] In *United States v. Villines, supra,* this Court opined that an accused could not be deprived of his right to a fair trial when an exculpatory defense witness refused to testify without immunity. Five years later in *United States v. Zayas, supra,* this Court made clear that the military judge must "fashion [some] appropriate remedy" when an accused is precluded from introducing "clearly exculpatory testimony" from a witness invoking his Fifth Amendment privilege. 24 MJ at 135–36. Finally, RCM 704(e) (issued in response to *Villines—see* Drafters' Analysis to RCM 704(e), Manual, *supra* at A21–35, but not in effect during Zayas' trial—24 MJ at 135 n.1.) provides:

(e) *Decision to grant immunity.* Unless limited by superior competent authority, the decision whether to grant immunity is a matter within the sole discretion of the appropriate general court-martial convening authority. However, if a defense request to immunize a witness has been denied, the military judge may, upon motion by the defense, grant appropriate relief directing that either an appropriate convening authority grant testimonial immunity to a defense witness or, as to the affected charges and specifications, the proceedings against the accused be abated, upon findings that:

(1) The witness' testimony would be of such *central importance to the defense case that it is essential to a fair trial;* and

(2) The witness intends to invoke the right against self-incrimination *to the extent permitted by law if called to testify.*

(Emphasis added.)

Relying on either the "clearly exculpatory" standard in our case law or the similar "central importance" standard articulated in the new Rule, the defense proffer in this case was lacking.[2] Sergeant Green's expected testimony, as detailed in her pretrial statement and as represented by her counsel, provided only that she had lived in the place where appellant was accused of distributing drugs and that she had no knowledge of his drug activities. This carefully worded and limited statement did not directly negate Linda Hamilton's accusations that appellant engaged in drug transactions in that house. This is because Sergeant Green also recognized that he was in her house when she was not present. Admittedly, this testimony contradicted the defense proffered assertion that Linda Hamilton would testify that Sergeant

---

1. RCM 704(d), Manual for Courts–Martial, United States, 1984, and its Discussion, state:

(d) *Procedure.* A grant of immunity shall be written and signed by the convening authority who issues it. The grant shall include a statement of the authority under which it is made and shall identify the matters to which it extends.

Discussion

A person who has received a valid grant of immunity from a proper authority may be ordered to testify. *In addition, a servicemember who has received a valid grant of immunity may be ordered to answer questions by investigators or counsel pursuant to that grant. See Mil.R.Evid. 301(c).* A person who refuses to testify despite a valid grant of immunity may be prosecuted for such refusal. Persons subject to the code may be charged under Article 134. *See* paragraph 108, Part IV. A grant of immunity removes the right to refuse to testify or make a statement on self-incrimination grounds. It does not, however, remove other privileges against disclosure of information. *See* Mil.R.Evid., Section V.

An immunity order or grant must not specify the contents of the testimony it is expected the witness will give.

When immunity is granted to a prosecution witness, the accused must be notified in accordance with Mil.R.Evid. 301(c)(2).

(Emphasis added.)

2. An additional circumstance of this case not present in either *United States v. Villines,* 13 MJ 46 (CMA 1982), or *United States v. Zayas,* 24 MJ 132 (CMA 1987), is that the military judge made an express ruling that the proposed testimony of Sergeant Green was not incriminating. Since the extraordinary relief mandated by these cases is warranted only when the Fifth Amendment prevents the proposed witness from testifying, *see United States v. Zayas, supra* at 135; *see also* RCM 704(e)(2), appellant's request and motion could have been denied on this ground alone.

Green was present during the transactions. Nevertheless, such potential credibility or impeachment evidence fails to meet the critical-importance standard that defense counsel needed to satisfy before appropriate remedial action could be ordered by the military judge. *United States v. Villines,* *supra* at 56 and n.9; *see United States v. Lowell,* 649 F.2d 950, 964–65 (3d Cir.1981); *Government of Virgin Islands v. Smith,* 615 F.2d 964, 972 (3d Cir.1980); *cf. United States v. Flomenhoft,* 714 F.2d 708, 713 (7th Cir.1983); *accord* RCM 704(e)(1).

Finally, contrary to defense counsel's proffer, Private Hamilton did not subsequently testify that Sergeant Green witnessed appellant's illegal drug activities.

Her testimony at trial concerning Sergeant Green was limited to her recollection that Sergeant Green lived in Nussloch, that they were friends, and that she had purchased heroin at the house where Sergeant Green lived.[3] Thus, Sergeant Green's pretrial statement that she had never seen any drug transactions at her home did not contradict Private Hamilton's testimony at all. Consequently, Sergeant Green's testimony as proffered cannot be said to be exculpatory in any meaningful way.[4]

The decision of the United States Army Court of Military Review is affirmed.

Judge COX and Senior Judge EVERETT concur.

---

**3.** Since the military judge ruled that Sergeant Green's statement was not incriminating, defense counsel could have then moved for the Government to compel her appearance at this court-martial. *See* Art. 46, Uniform Code of Military Justice, 10 USC § 846. The Government, we note, had already conceded that Sergeant Green was a material witness. Defense counsel could have questioned Sergeant Green on the witness stand despite the military judge's adverse ruling on the immunity question. Art. 46; RCM 703. No such request was made.

**4.** We note that defense counsel did not attempt to impeach Private Hamilton with her purported pretrial statements identifying Sergeant Green as a witness to the charged drug offenses.