UNITED STATES, Appellee,

v.

**James K. THOMAS, Mess Management Specialist First Class U.S. Navy, Appellant.**

No. 68,155.
CMR No. 90 3316.

U.S. Court of Military Appeals.

Argued March 9, 1993.

Decided Aug. 3, 1993.

For Appellant: *Commander Timothy C. Young,* JAGC USN (argued); *Lieutenant James A. Douglas,* JAGC, USNR (on brief); *Lieutenant James P. McFadden,* JAGC, USNR.

For Appellee: *Lieutenant J.C. Foster,* JAGC, USNR (argued); *Colonel T.G. Hess,* USMC, *Commander W.F. Shields,* JAGC, USN, *Lieutenant Commander Lawrence W. Muschamp,* JAGC, USN (on brief); *Captain Brett D. Barkey,* USMCR.

*Opinion of the Court*

CRAWFORD, Judge:

Appellant was tried by general court-martial before officer and enlisted members. Contrary to his pleas, appellant was found guilty of attempting to introduce cocaine onto a military installation, conspiracy to possess cocaine with intent to distribute, possessing cocaine with intent to distribute, and using cocaine, in violation of Articles 80, 81, and 112a, Uniform Code of Military Justice, 10 USC §§ 880, 881, and 912a, respectively. Appellant was sentenced to a bad-conduct discharge, confinement for 120 days, total forfeitures, and reduction to E1. The convening authority approved the sentence, and the Court of Military Review affirmed the findings and sentence in an unpublished opinion dated

May 22, 1992. This Court granted review of the following issue: [1]

WHETHER THE NAVY–MARINE [CORPS] COURT OF MILITARY REVIEW HAS PROPOSED AN INCORRECT STANDARD OF REVIEW TO TEST WHETHER A PROSPECTIVE WITNESS' TESTIMONY IS ESSENTIAL TO A FAIR TRIAL.

After consideration of the record of trial, briefs, and oral argument,[2] we answer the granted issue in the affirmative.[3]

## FACTS

The Court of Military Review found the following facts:

[T]he appellant agreed to assist one MS2 Ortiz, a military subordinate, who had local contacts in Puerto Rico, where the offenses occurred, to acquire a quantity of cocaine from Santurce, a community evidently located at a sufficient distance from the naval station to necessitate traveling there by automobile. Assistance was required because Ortiz' own automobile was in need of repairs at the time. The appellant telephoned his wife, a civilian dependent, and procured her to drive Ortiz to Santurce, explaining to her during the telephone call the illicit purpose of the mission. She agreed to drive Ortiz to Santurce, but, for reasons of her own relating to her husband's suspected marital infidelity, she disclosed the entire matter to a naval station security investigator in advance of their departure. While she and Ortiz were in Santurce, a reception was arranged for them at the main gate of the naval station, which resulted in the seizure of thirteen small

---

1. The offer of proof indicates that MS2 Ortiz would testify that he lied to appellant, his work supervisor, as to the reason that he needed to go to Santurce, stating that he needed to go there to borrow money from relatives. The military judge's findings indicate, to the contrary, that appellant "learned of the cocaine during the trip." This finding appears to conflict with the facts in the record. According to all accounts, only Mrs. Thomas and MS2 Ortiz made the trip to Santurce in appellant's car. Therefore, if MS2 Ortiz lied to appellant about the purpose of the trip, the only person he could have told about the cocaine during the trip was Mrs. Thomas. Hence, appellant either knew about the purchase of cocaine from the beginning or not at all. The value of MS2 Ortiz' testimony, because appellant did not go on the trip to Santurce, moves from "factually ambiguous and . . . not clearly exculpatory of the accused" to just the opposite concerning all charges associated with the trip to Santurce.

2. We heard oral argument in this case at the United States Merchant Marine Academy on March 9, 1993, without objection from the parties involved. *See* Foundation of the Federal Bar Association, *Equal Justice Under Law: The Supreme Court in American Life* 15–18 (1965); *see also* D. O'Brien, *Storm Center: The Supreme Court in American Politics* 78, 135–40 (2d ed 1990). This procedure is similar to the well-established practice of the United States Court of Appeals for the Eighth Circuit which holds hearings at various law schools within its circuit. The United States Court of Military Appeals conducts hearings such as this outside of its permanent courthouse in Washington, D.C., as part of its "Project Outreach," a public awareness project which demonstrates not only the operation of a Federal appellate court, but also the quality and effectiveness of the criminal justice system of our Armed Services and the Uniform Code of Military Justice (Arts. 1–146, 10 USC §§ 801–946, respectively). The project exposes students, servicemembers, military and civilian attorneys, and the American public who witness these hearings to a democratic America capable of maintaining an Armed Force instilled with the appropriate discipline to make it a world power and yet able to afford the members of that Armed Force a fair and impartial justice system which provides to its members all protection of the United States Constitution and Federal laws "except those which are expressly or by necessary implication inapplicable." *United States v. Jacoby,* 11 USCMA 428, 430–31, 29 CMR 244, 246–47 (1960).

In the past, Project Outreach visits have been made to the various military academies, law schools, and numerous military bases. Additionally, Project Outreach has initiated live television coverage of the Court's hearings. We hope that this greater exposure will impress upon the general public the exemplary system of justice afforded those who choose to serve and defend their country.

3. Concerning granted Issues II and III, we find no merit in appellant's assertions based upon our recent decisions in *United States v. Carpenter,* 37 MJ 291 (CMA 1993), and *United States v. Graf,* 35 MJ 450 (CMA 1992), *cert. granted sub nom. Weiss v. United States,* — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993). We do find merit in granted Issue I.

bags of cocaine from Ortiz upon their return.

In addition to her disclosures made prior to the drive to Santurce, Mrs. Thomas later made a written statement under oath to the Naval Investigative Service (NIS) outlining the above events and even testified about them in a relatively consistent manner at Ortiz' Article 32 investigation. At the appellant's trial, however, she recanted and testified that, as far as she knew and had been told by her husband, the purpose of the trip was to enable Ortiz to pick up some money in Santurce; and that only after they were already in Santurce did Ortiz mention the subject of drugs and acquire cocaine. This testimony was, of course, utterly discredited by her prior inconsistent NIS statement and Article 32 testimony, the latter of which was also admitted as substantive evidence pursuant to Military Rule of Evidence (M.R.E.) 801(d)(1)(A). Unpub. op. at 1–2.

Concerning the Motion for Appropriate Relief requesting that MS2 Ortiz be produced to testify under a grant of testimonial immunity at appellant's trial, the military judge found:

Petty Officer Ortiz will, if called as a witness, claim the privilege against self-incrimination. The proffer of testimony of Petty Officer Ortiz that he did not conspire with Petty Officer Thomas to possess cocaine with intent to distribute is exculpatory[;] however, other aspects of this proffer of testimony, specifically that his car broke down, that he asked Petty Officer Thomas to take him to pick up cocaine, and the fact that he learned of the cocaine during the trip, is factually ambiguous and this court feels is not clearly exculpatory of the accused. Mrs. Thomas [testified] at a prior Article 32 Investigation that her husband, MS1 Thomas, asked her "to transport Petty Officer Ortiz to acquire some coke." Subsequently, she had recanted her testimony as being false and is expected to testify at this court on the merits that her husband, Petty Officer Thomas, did not conspire with Petty Officer Ortiz as

alleged on the charge sheet. Thus, Petty Officer Ortiz's testimony, in this respect, will be cumulative and in this court's opinion, is not so central to the accused's case as to deny him a fair trial. Further the Government has demonstrated a strong and contravening interest in prosecuting Petty Officer Ortiz. Thus, this court finds it unnecessary to direct the appropriate convening authority to grant testimonial immunity to Petty Officer Ortiz or to abate these proceedings regarding the affected specifications.

Trial counsel noted "that the Government has a very heavy burden to meet to show that it obtains no benefit from Petty Officer Ortiz' immunized testimony" and that "[t]he Government right now isn't sure whether it can meet that heavy burden." Trial counsel also stated that "the Government's interest in these cases [appellant's and Ortiz'] outweighs the defense's interest in obtaining cumulative evidence."

Trial counsel admitted during a session under Article 39(a), UCMJ, 10 USC § 839(a), that the sole source of the Government's evidence on the conspiracy charge was the testimony of Mrs. Thomas at the investigation under Article 32, UCMJ, 10 USC § 832, regarding Ortiz. The Government argued against immunizing MS2 Ortiz for two reasons: First, because his testimony would be cumulative with the recanted testimony of Mrs. Thomas and, second, because of the "heavy burden" placed on the Government to prove an independent basis for a subsequent prosecution of a previously immunized witness.

The offer of proof by defense counsel at trial was that MS2 Ortiz would testify that

his car was broken down, that he did not know Petty Officer Thomas very well. He had worked with him for a few weeks. That he asked Petty Officer Thomas if there was any way he could get a ride. He had to go get some money in town in Santurce. Petty Officer Thomas called his wife. His wife took [MS2 Ortiz] on this trip. On this trip,

[MS2 Ortiz] made known while he was there buying the cocaine, that was really why he was there, to buy the cocaine.

Mrs. Thomas was called as a witness for the defense and testified for appellant concerning all the charged offenses. In addition to the offenses appellant was convicted of, he was also charged with two specifications of assaulting his wife. Mrs. Thomas testified in essence that, because appellant had "had an affair" with another woman resulting in a pregnancy and because of threats by her mother to have her children taken away from her if she was not back at home by Christmas, she: (1) staged the assault; (2) mixed cocaine in appellant's drinks causing him to test positive for cocaine; and (3) made up the story that appellant told her to drive MS2 Ortiz to Santurce to buy cocaine.

## DISCUSSION

In *United States v. Zayas*, 24 MJ 132 (CMA 1987), this Court decided that a military judge "confronted with a proffer of clearly exculpatory testimony of a witness who will invoke his privilege against self-incrimination if called to testify ... cannot sit idly by." 24 MJ at 135. Additionally, this Court held that

> [w]hen such a proffer is made and the Government does not make a particular and substantive contention that testimonial immunity will jeopardize a contemplated future prosecution of the witness, consideration of the accused's due-process and fair-trial rights requires the military judge to fashion an appropriate remedy. Simply denying an accused the use of such testimony under these circumstances is fundamental error.

24 MJ at 136. *See also United States v. Alston*, 33 MJ 370 (CMA 1991); *United States v. Capozzi*, 883 F.2d 608, 613–14 (8th Cir.1989), *cert. denied*, 495 U.S. 918, 110 S.Ct. 1947, 109 L.Ed.2d 310 (1990).

The military judge denied appellant's motion for appropriate relief because he found MS2 Ortiz' testimony to be "factually ambiguous and ... not clearly exculpatory" of appellant. The military judge also found

the Government to have "demonstrated a strong and contravening interest in prosecuting" MS2 Ortiz. As noted by the court below, the Government has conceded that trial counsel failed to "make a particular and substantive contention that testimonial immunity will jeopardize a contemplated future prosecution of the witness" and has "[a]pparently conced[ed] that the claimed testimony of Ortiz, if believed, would not have been ambiguous and would have been clearly exculpatory (at least as to the conspiracy charge)." Unpub. op. at 2.

■ Due to the Government's concessions, the narrow issue before this Court is the appropriateness of the credibility test proposed by the court below to evaluate exculpatory evidence and determine whether that evidence is essential to a fair trial. This proposed test would allow convening authorities and trial judges to use "the standard of beyond a reasonable doubt, to make an objective determination, reviewable for legal error, that no reasonable trier of fact would credit the testimony sought to be immunized." Unpub. op. at 3.

We rejected such an approach in *Zayas*, holding simply that it is fundamental error to deny an accused use of such testimony. We again reject such an approach. It is virtually impossible to predict what evidence might influence the decision of a jury particularly where, as here, there is a legitimate motive for revenge by a key witness. For example, the members found appellant not guilty of the assault charges, suggesting that they found Mrs. Thomas' self-stated motives to exact revenge upon her husband to be at least somewhat persuasive. Despite Mrs. Thomas' best efforts, however, appellant was convicted of the remainder of the offenses. The value of MS2 Ortiz' testimony coupled with Mrs. Thomas' motive for revenge may well have tipped the balance in favor of an acquittal of the additional offenses.

■ The judge's denial of the defense motion precludes us from determining precisely what would have been the substance and the quality of MS2 Ortiz' testimony. As noted by the court below, "any expecta-

tions as to the nature of Ortiz' testimony had to be based solely on the representations of counsel." Unpub. op. at 4. Under these circumstances, we conclude that a *DuBay*[4] hearing now is appropriate at which such testimony can be obtained and evaluated.

The decision of the United States Navy–Marine Corps Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Navy for submission to a general court-martial convening authority, who may refer the record to a general court-martial for a limited hearing on the matter in issue or, if that authority determines in the exercise of discretion that further proceedings are impracticable, dismiss the charges and forward an authenticated copy of that dismissal action to this Court. If a general court-martial is convened, the military judge, under the provisions of Article 39(a), UCMJ, 10 USC § 839(a), will conduct the limited hearing. At the conclusion of such proceedings the judge will enter findings of fact and conclusions of law and then return the original record and a verbatim transcript of the hearing directly to this Court.

Chief Judge SULLIVAN and Judges COX and WISS concur.

GIERKE, Judge (concurring in the result):

I agree with the result in this case, but I would answer the granted issue in the negative and hold that the military judge erred in characterizing the proffered testimony as "factually ambiguous" and "cumulative." The proffered testimony, if believed, would have been "clearly exculpatory," *see* 37 MJ 305, regarding the charge of conspiracy to possess cocaine, because it would have established that appellant was unaware that Ortiz intended to purchase cocaine.

The majority opinion sets out only part of the test proposed by the court below. *See* 37 MJ 305. The Court of Military Review proposed the following:

The middle ground which we propose . . . is to allow [the convening authority and the military judge], using the standard of beyond a reasonable doubt, to make an objective determination, reviewable for legal error, that no reasonable trier of fact would credit the testimony sought to be immunized. If such a determination was correctly made, the testimony would then be rightly deemed not clearly exculpatory, and immunity should be denied. . . .

Whether or not such a rule applies at the trial level, there can be little doubt that, at the appellate level, the likely effect of the expected testimony of a prospective witness who is erroneously denied immunity is material to assessing any such error for harmlessness; that the credibility of the witness and his testimony is a material factor in gauging such effect; and that the findings of guilty may be affirmed if an appellate court is satisfied beyond a reasonable doubt that the immunized testimony, had it been presented, would have had no effect at all upon the outcome of the case.

Unpub. op. at 3.

I believe that the foregoing test is consistent with *United States v. Zayas*, 24 MJ 132 (CMA 1987), and Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a). It is a very restrictive test, giving the convening authority or military judge authority to deny immunity only in rare cases where the proffered testimony is totally unworthy of belief.

The proposed test is objective; it does not allow a convening authority or military judge to make a subjective credibility evaluation. If a convening authority or military judge correctly determines that "no reasonable trier of fact would credit the testimony," then the testimony would be without probative value and legally irrelevant. Mil.R.Evid. 401, 402, and 403, Manual for Courts–Martial, United States, 1984. I cannot fathom how irrelevant evidence could ever constitute the "clearly exculpa-

4. *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

tory" evidence contemplated by *Zayas* (24 MJ at 135) or how prejudicial error could ever be predicated on exclusion of irrelevant evidence. *See* Art. 59(a).

I would limit the authority to deny immunity to those rare cases contemplated by the Court of Military Review's test and would scrutinize carefully any denial of immunity. I am not prepared to divest the military judge of authority to avoid a total waste of the court's time.

Turning to the facts of this case, I would hold that the military judge erred by making a subjective rather than an objective evaluation of Petty Officer Ortiz' testimony and by ruling that his testimony would be cumulative with that of Mrs. Thomas, whose in-court testimony contradicted her earlier statements. If believed, Ortiz' testimony would be clearly exculpatory, as required by *Zayas*, and corroborative rather than cumulative. Accordingly, I concur in the result.