**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Howard TAYLOR, Defendant-Appellant.**

No. 83–2160.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1983.

Decided Feb. 27, 1984.

As Amended Feb. 28, 1984.

Rehearing Denied April 12, 1984.

R. Phillip Reed, Traynor, Hendricks & Reed, Springfield, Ill., for defendant-appellant.

Ellen Schanzle-Haskins, Asst. U.S. Atty., Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Before POSNER, COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from the defendant's convictions for one count of bank robbery with a dangerous weapon, in violation of 18 U.S.C. § 2113(d) (1982), and for one count of bank robbery, in violation of 18 U.S.C. § 2113(a) (1982). Together with this appeal, the defendant has also presented this court with a motion to gain access to the transcript of an *in camera* proceeding and with a motion to remand the case to the district court for an evidentiary hearing. For the reasons set forth below, we affirm the defendant's convictions, and we deny the defendant's motions.

On the morning of Friday, August 7, 1981, two men wearing stocking hat masks entered the Bank of Carlock in Carlock, Illinois. One man carried a .45 caliber handgun, and the other carried a sawed-off shotgun. While holding customers and employees of the bank at gunpoint in the

bank's vault, the gunmen gathered approximately $17,336, which they put in a pillowcase. They then drove off in a maroon Chevrolet owned by the bank, but they were pursued by a bank customer who had driven up to the bank at the moment of the getaway. After a highspeed chase on a highway outside of Carlock, the customer turned back when the maroon Chevrolet pulled onto the shoulder of the highway and one of the bank robbers ran toward the customer's car with his pistol drawn. As the customer retreated, he noticed that a silver Impala, which had appeared during the chase, had also pulled off the road and seemed to be waiting. Law enforcement officials later found the maroon Chevrolet, two stocking hat masks, two pairs of gloves, and a pillowcase on the shoulder of the highway.

Four months later, on December 6, 1982, a grand jury returned a two-count indictment charging the defendant with the bank robbery. At the defendant's jury trial that began on April 11, 1983, the vice president of the bank testified that the Bank of Carlock was federally insured during 1981. The prosecution then presented a number of witnesses who testified that the defendant was a friend of David Neff and that Neff and the defendant had discussed plans for pulling an armed robbery. Additional government testimony established that Neff had borrowed a .45 caliber handgun a few months before the robbery, that he kept a sawed-off shotgun in his home, and that he owned a silver Impala. Furthermore, government witnesses testified that, in the weeks following August 7, 1981, both the defendant and Neff had large amounts of money at their disposal, which they had not had previously.

On the second day of the three-day trial, prior to the close of the government's case, a conference took place outside the presence of the jury, during which the court discussed the defendant's intention to call David Neff as a witness. The prosecutor informed the court that, although the government had granted Neff use immunity to testify before the grand jury in this case, the government had revoked that immunity in a letter that was mailed to Neff's attorney earlier in the day. The prosecutor stated that the government had evidence that Neff "perhaps perjured himself" and that he was the subject of a grand jury investigation for bank robbery, perjury, and cocaine distribution. Trial Transcript at 463. The following day, another conference took place outside the presence of the jury, at which Neff's attorney appeared and indicated that Neff would assert his rights under the fifth amendment if he were called to testify at the defendant's trial. The defendant's attorney charged that the government had revoked Neff's immunity only to frustrate the defendant's defense, and he asked the court to compel the government to extend immunity to Neff. The prosecutor, on the other hand, represented to the court that the government had every intention of indicting Neff. Ruling that it had not heard anything that would indicate bad faith on the part of the government, the court refused to compel the government to extend immunity to Neff. *Id.* at 554–55. However, in view of Neff's intention to invoke the fifth amendment, the court found Neff to be unavailable, pursuant to rule 804(a)(1) of the Federal Rules of Evidence, and it allowed excerpts of Neff's grand jury testimony, in which Neff denied involvement in the robbery, to be read to the jury at the close of the government's case.

During closing argument, the defense counsel called into question the strength of the government's circumstantial evidence and the credibility of one of the government witnesses. In her rebuttal argument, the prosecutor reviewed much of the evidence and questioned the credibility of Judi Taylor, the defendant's former wife, who had testified for the defense. The jury returned a verdict of guilty on both counts.

At the defendant's sentencing hearing on June 10, 1983, the defense counsel informed the court that David Neff had not yet been indicted for the robbery, contrary to the representations that had been made by the prosecutor on the second day of trial. Contending that the lack of an indictment indi-

cated government misconduct in revoking Neff's immunity, the defense counsel moved for a new trial. The district court held an *in camera* conference with the prosecutor in order to question the prosecutor about the delay in bringing an indictment against Neff. After the *in camera* conference, the court affirmed its prior ruling that there was no bad faith on the part of the government. *See* Sentencing Transcript at 9. The court then sentenced the defendant to imprisonment for eighteen years.

In appealing his convictions, the defendant raises three issues. First, he argues that the government failed to prove beyond a reasonable doubt that the Bank of Carlock was federally insured. Second, the defendant claims that he was denied his fifth amendment right to due process and his sixth amendment right to compulsory process when the government revoked Neff's immunity. Third, the defendant contends that the prosecutor engaged in improper rebuttal argument.

## PROOF OF FEDERAL INSURANCE

■ When prosecuting a defendant under the federal bank robbery statute, the government must prove the federally insured status of the bank as an element of the offense.[1] The defendant argues that in this case, the testimony of the bank's vice president, unaccompanied by evidence such as the certificate of insurance or the contract of insurance, was insufficient proof of insurance. The government responds that this testimony was sufficient to prove the bank's insured status on the date of the robbery.

■ This court recently has established that, in order to support a conviction under

federal banking statutes, evidence regarding a bank's insured status must indicate to the jury that the insurance existed at the time of the commission of the offense. *See United States v. Shively,* 715 F.2d 260 (7th Cir.1983) (conviction for falsely stating the purpose of a loan, in violation of 18 U.S.C. § 1014, reversed because certificate of insurance issued in 1969 could not be taken to refer to the bank's insured status in 1978, when the crime was committed); *United States v. Knop,* 701 F.2d 670, 673 (7th Cir. 1983) (bank officers' testimony that bank "is" insured "could plausibly have been taken by the jury as referring to the time of the commission of the offense" and was sufficient to support conviction).

■ In the present case, the bank's vice president testified that the Bank of Carlock was insured by the Federal Deposit Insurance Corporation for the entire year of 1981. Trial Transcript at 200–01. Because this testimony clearly indicated to the jury that the bank was federally insured on August 7, 1981, the date of the robbery, it satisfied the proof requirement established in *Shively* and *Knop.* Furthermore, the vice president's testimony was uncontroverted by any evidence offered by the defendant. We thus hold that the jury had sufficient evidence to conclude beyond a reasonable doubt that the Bank of Carlock was insured on the date of the offense.[2]

## REVOCATION OF NEFF'S IMMUNITY

The defendant claims that the government violated his fifth amendment right to due process and his sixth amendment right to compulsory process when it revoked Neff's use immunity on the second day of the trial. According to this claim, "unfairness to the defendant resulted from the fact

---

1. As used in the federal bank robbery statute, [t]he term "bank" means any member bank of the Federal Reserve System, and any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, and any bank the deposits of which are insured by the Federal Deposit Insurance Corporation.
18 U.S.C. § 2113(f) (1982).

2. To the extent that the defendant implies that evidence in the form of a bank officer's testimony is not as strong as documentary evidence, we find that such a point should be raised to the jury through effective cross-examination, rather than to this court on appeal. The defendant conceded at oral argument that the vice president of the bank was not cross-examined at trial.

that the government alone was able to determine whether it was to its immediate advantage to continue or revoke the grant of immunity to Mr. Neff." Appellant's Brief at 25. The defendant argues that, in light of this unfairness, the trial court should have compelled the government to grant immunity to Neff. Furthermore, in connection with this claim, the defendant has asked this court to grant his counsel access to the transcript of the June 10 *in camera* proceeding, and to remand the case to the district court for an evidentiary hearing to ascertain the circumstances that prevent the government from obtaining an indictment against Neff.

The government replies that the trial court did not err in refusing to order the government to grant immunity to Neff— "[n]either the courts nor defense counsel have a legal or constitutional right to use the immunity statute to compel the testimony of defense witnesses." Appellee's Brief at 26. Moreover, the government contends that the defendant was not prejudiced by the revocation of Neff's immunity because the government did not use any testimony by Neff in its case. In fact, the defense counsel was allowed to read Neff's exonerating grand jury testimony to the jury. According to the government, there is no duty to provide immunity where, as here, evidence exists that the witness perjured himself and did not meet his immunity obligations.

It is clear that use immunity is a statutory creation, *United States v. Lenz,* 616 F.2d 960, 962 (6th Cir.), *cert. denied,* 447 U.S. 929, 100 S.Ct. 3028, 65 L.Ed.2d 1124 (1980), and that Congress has delegated the authority to grant use immunity solely to the executive branch of government. 18 U.S.C. § 6003 (1982). In exercising this authority, the executive must balance "the public need for the particular testimony or documentary information in question against the social cost of granting immunity and thereby precluding the possibility of criminally prosecuting an individual who has violated the criminal law." *In re Daley,* 549 F.2d 469, 478–79 (7th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). Both the exclusive nature of Congress's delegation and the fact that the balancing process is wholly within the expertise of the executive branch foreclose the federal courts from taking more than a ministerial role in prosecutorial immunity decisions that are made properly under 18 U.S.C. § 6003. *Id.* at 479. *See also United States v. Smith,* 542 F.2d 711, 715 (7th Cir.1976); *United States v. Allstate Mortgage Corp.,* 507 F.2d 492, 495 (7th Cir.1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975).[3] The sixth amendment right to compulsory process does not mandate otherwise. This provision ensures that a defendant has subpoena power to summon witnesses so that the jury may hear the defendant's version of the facts. *See Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967). It "does not suggest a right to supercede [sic] a witness' invocation of his own fifth amendment privilege or the right to demand that the government shield a witness from the consequences of his own testimony." *United States v. Chagra,* 669 F.2d 241, 260 (5th Cir.), *cert. denied,* 459 U.S. 846, 103 S.Ct. 102, 74 L.Ed.2d 92 (1982). *See also Washington v. Texas,* 388 U.S. at 23 n. 21, 87 S.Ct. at 1925 n. 21 (although the sixth amendment invalidated Texas statutes that prohibited persons charged or convicted as co-participants in the same crime from testifying for one another, the Court noted that "[n]othing in [its] opinion should be construed as disapproving testimonial privileges, such as the privilege against self-incrimination").

---

**3.** The Third Circuit has ruled that a court has inherent authority, derived from the defendant's due process right to present exculpatory evidence, to grant nonstatutory immunity to defense witnesses. *Government of Virgin Islands v. Smith,* 615 F.2d 964, 969–74 (3d Cir. 1980). The issue of constitutionally-derived judicial immunity is not before us in the present case. The defendant did not ask the trial court to grant its own immunity to Neff. He asked only that the court order the prosecutors to exercise their statutory authority so as to reinstate Neff's immunity.

The government's authority to request immunity under 18 U.S.C. § 6003 is not unlimited. Prosecutors must exercise this authority within the bounds of the due process clause of the fifth amendment. *See United States v. Alessio,* 528 F.2d 1079, 1082 (9th Cir.), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3167, 49 L.Ed.2d 1184 (1976). Thus, this circuit has held that it "will not review a prosecutor's immunization decisions in the absence of substantial evidence showing that the prosecutor's actions amounted to a clear abuse of discretion violating the due process clause." *United States v. Wilson,* 715 F.2d 1164, 1173 (7th Cir.1983). *See also United States v. Flomenhoft,* 714 F.2d 708, 713 (7th Cir.1983). Such an abuse of discretion occurs when a prosecutor intends to use his authority under the immunity statute to distort the judicial fact-finding process. *United States v. Frans,* 697 F.2d 188, 191 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 104, 78 L.Ed.2d 107 (1983).

In the present case, the prosecutor explained to the trial court that, less than a week before the commencement of trial, the government had received information indicating that Neff had lied when he testified before the grand jury under a grant of immunity. The prosecutor identified this new information by referring to certain facts elicited from Ken Tudor, a prosecution witness.[4] The district court found no bad faith on the part of the government. Trial Transcript at 554. We also can find no basis in the record for not believing that the prosecutor, while preparing for trial, learned information from one witness that contradicted Neff's grand jury testimony. Since Neff's immunity agreement required him to give truthful testimony, it was within the prosecutor's discretion, under 18 U.S.C. § 6003, to determine that Neff had broken the agreement and to revoke his immunity as a consequence. In addition, the record does not show that the government's decision to grant immunity to Tudor and to Dallas Manns, another government witness who testified at trial, was related to the decision to revoke Neff's immunity. Thus, the granting of immunity to both Tudor and Manns is not indicative of prosecutorial bad faith in revoking Neff's immunity. *See United States v. Herman,* 589 F.2d 1191, 1204 (3d Cir.1978), *cert. denied,* 441 U.S. 913, 99 S.Ct. 2014, 60 L.Ed.2d 386 (1979). *Cf. United States v. Thevis,* 665 F.2d 616, 641 n. 28 (5th Cir.1982) ("a trial is not a 'symmetrical proceeding' which requires a court to grant the defendant's witnesses immunity because the government uses immunized witnesses"), *cert. denied,*

---

4. At the conference regarding Neff's immunity that was held outside the presence of the jury on the third day of trial, the following discussion took place between the defendant's attorney (Mr. Reed), the prosecutor (Ms. Schanzle-Haskins), and the trial court:

MR. REED: I might pose this question, Your Honor.

How am I ever going to know that the Government did in fact acquire independent evidence [implicating Neff] on Saturday? How am I going to know that?

MS. SCHANZLE-HASKINS: Your Honor, I would represent to the Court that Mr. Reed already knows that because he heard our independent testimony that we gained on Saturday from that stand about ten minutes ago in the form of the testimony of Mr. Ken Tudor. He's the one who came forward with all the testimony that links Neff up with it.

THE COURT: Are you suggesting that that's into [sic] information?

MS. SCHANZLE-HASKINS: Certainly is, Your Honor, certainly is new information. We didn't know until Saturday that there was—that Mr.

Neff had borrowed the forty-five [handgun] from him [Tudor]. We didn't know that the pillow case belongs to Neff. We didn't know that the brown and white stocking hat belongs to Neff. That certainly is new information, and in the public interest we cannot—we cannot just give a blanket immunity that can never be revoked if we find out from independent sources that someone has robbed the bank. We just can't let him [Neff] go on and have immunity.

THE COURT: Let me ask you this question.... [A]re you telling me that David Neff's involvement, categorical involvement in this bank robbery is something which has only been in your mind since last Saturday?

MS. SCHANZLE-HASKINS: No, Your Honor.

We had thought initially that he was the one ... who was the driver of the get away car. Now, he was immunized, and he went in the Grand Jury, and said he wasn't, said he wasn't in any way involved. We believed that he perjured himself in the Grand Jury and—or, Your Honor, and I think we can prove it. Trial Transcript at 547–49.

459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982), 458 U.S. 1109, 102 S.Ct. 3489, 73 L.Ed.2d 1370 (1982), 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982).[5] Based on our review of the record, we conclude that there is not substantial evidence showing that the prosecutor intended to distort the fact-finding process by revoking Neff's immunity on the second day of trial. We therefore hold that due process did not require the trial court to order the government to grant immunity to Neff.

 The fact that the government had not indicted Neff by the time of the sentencing hearing does not change our result. At the *in camera* conference, which the defense counsel was not allowed to attend, the prosecutor explained the problems involved in indicting Neff. Although trial courts should avoid such *ex parte* conferences, we recognize that, in this case, a discussion outside the presence of the defense counsel was deemed necessary in order for the prosecutor to disclose the progress of the government's investigation of Neff. The trial judge emerged from the conference satisfied that the government was acting in good faith, and we find nothing in the transcript of the conference that would support an inference to the contrary. The conference produced descriptions of prosecutorial communications with Neff. A knowledge of the confidential details of these communications is not necessary in order for the defendant to assert his claim that the government was untruthful in its explanation of the revocation of Neff's immunity. Therefore, under the specific circumstances of this case, we deny the defendant's motion that his counsel be allowed to review the transcript of the *in camera* conference. Furthermore, the confidential nature of a pre-indictment investigation convinces us that an evidentiary hearing to ascertain the circumstances preventing Neff's indictment would be improper. We thus deny the defendant's motion for a remand to the district court for such a hearing.

## PROSECUTOR'S REBUTTAL

The defendant claims that the prosecutor's rebuttal argument was improper because it attacked the credibility and testimony of defense witness Judi Taylor, and because it referred to Ken Tudor's testimony that the defendant had attempted to borrow the .45 caliber handgun after Neff had returned it to Tudor. The defendant contends that, since the defense attorney had not mentioned these matters in his closing argument, it was improper and prejudicial for the prosecutor to raise them during rebuttal. The government, on the other hand, replies that the prosecutor's rebuttal argument was a proper response to the defense attorney's closing argument.

 It is settled in this circuit that, in their summations to the jury, prosecutors are entitled to respond to arguments articulated by defense counsel. *United States v. West,* 670 F.2d 675, 688 (7th Cir.), *cert. denied,* 457 U.S. 1124, 1139, 102 S.Ct. 2944, 2972, 73 L.Ed.2d 1340, 1359 (1982); *United States v. Falk,* 605 F.2d 1005, 1013 (7th Cir.1979), *cert. denied,* 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980); *United States v. Isaacs,* 493 F.2d 1124, 1165 (7th Cir.), *cert. denied,* 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974).[6] Consistent with this doctrine is a limitation stated by several circuits: "As a general rule, Government counsel should not be allowed to develop new arguments on rebuttal, but should be restricted to answering the arguments put forth by defense counsel." *Moore v. United States,* 344 F.2d 558, 560 (D.C.Cir.1965). *See also United States v.*

---

**5.** Any suggestion in *United States v. Allstate Mortgage Corp.,* 507 F.2d 492, 495 (7th Cir. 1974), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975), that prosecutors may never grant immunity to government witnesses when they refuse immunity to a defense witness was clearly dictum.

**6.** *Accord United States v. Montemayor,* 684 F.2d 1118, 1124 (5th Cir.1982); *United States v. Daniels,* 617 F.2d 146, 150 (5th Cir.1980); *United States v. Houde,* 596 F.2d 696, 704 (5th Cir.), *cert. denied,* 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979); *United States v. Hiett,* 581 F.2d 1199, 1204 (5th Cir.1978).

*Gleason,* 616 F.2d 2, 25–26 (2d Cir.1979), *cert. denied,* 444 U.S. 1082, 100 S.Ct. 1087, 62 L.Ed.2d 767 (1980), 445 U.S. 931, 100 S.Ct. 1320, 63 L.Ed.2d 764 (1980); *United States v. Lawson,* 483 F.2d 535, 538 (8th Cir.1973), *cert. denied,* 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974). This limitation on rebuttal is supported by the legislative history of rule 29.1 of the Federal Rules of Criminal Procedure, the rule that outlines the order of closing arguments in a criminal trial. In its notes regarding the proposed rule 29.1, the House Committee on the Judiciary stated that "fair and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution in behalf of conviction before the defendant is faced with the decision whether to reply and what to reply." H.R.Rep. No. 94–247, 94th Cong., 1st Sess. 17 (1975). We find this reasoning to be sound, and we therefore adopt the position that a prosecutor cannot use rebuttal to put forth new arguments, but is restricted to responding to the points made by the defense counsel in closing argument.

During closing arguments in the present case, the defense attorney reviewed the testimony of the government's expert witness and questioned the credibility of Ken Tudor and Dallas Manns. The defense counsel also pointed out that the government presented only circumstantial evidence against the defendant, and he suggested that this evidence was insufficient to sustain the government's burden of proof. The prosecutor, in her rebuttal argument, reminded the jury of Ken Tudor's testimony that, after Neff returned the .45 caliber handgun that he had borrowed from Tudor, the defendant asked to borrow the gun, and Tudor refused to lend it to him. The prosecutor then proposed to the jury that the defendant had wanted to borrow the gun in order to wipe off his fingerprints. Several minutes later, the prosecutor reviewed the testimony of Judi Taylor, the defendant's former wife, who had stated that she normally worked on Friday mornings and that the defendant normally stayed home during this time in order to assist a mentally retarded man who had been entrusted to

Judi's care. The prosecutor suggested that one of two things happened: either Judi worked in the afternoon and was home in the morning, leaving the defendant free to rob the bank, or Judi worked in the morning, but the defendant left the mentally retarded patient with someone else and proceeded to rob the bank.

Applying the restriction on rebuttal argument expressed in our discussion above, we find that, since the defense attorney's arguments did not address particular points of Tudor's testimony or the testimony of Judi Taylor, the prosecutor's rebuttal comments on these issues were improper and constituted error. However, we further find that the error was harmless. The prosecutor's remarks concerning the defendant's intention to wipe fingerprints off the handgun were relevant to the jury's assessment of the defendant's suspicious behavior after the robbery. Such behavior had been demonstrated through testimony establishing that the defendant had spoken about possible retaliation against a witness who had testified before the grand jury, *see* Trial Transcript at 386, that the defendant had threatened a witness not to say anything about the robbery, *see* Trial Transcript at 350, and that the defendant expressed an intent to sell his car when he received a subpoena to produce carpet fiber samples from his car, *see* Trial Transcript at 389–90. The government, during its first closing argument, had reminded the jury of the suspicious nature of these activities and had suggested that the defendant was attempting to hide his involvement in the robbery. In light of such evidence and such arguments properly presented to the jury, we do not find the prosecutor's brief reference to the suspiciousness of the defendant's request to borrow the gun from Tudor to be reversible error. Furthermore, the prosecutor's discussion of Judi Taylor's testimony during rebuttal argument added very little to what had properly come before the jury while Judi was on the witness stand. The prosecutor's theories of the whereabouts of the Taylors on the morning of the robbery had been presented to the jury during the

government's exhaustive cross-examination of Judi. *See* Trial Transcript at 620–27. We thus hold that the additional raising of these theories during rebuttal was harmless error and does not require reversal in this case.

Accordingly, the defendant's convictions are affirmed, and his motions to this court are denied.