In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2330

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARQITIS M. WRIGHT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 2:08-cr-00251—**Charles N. Clevert, Jr.**, *Chief Judge.*

ARGUED DECEMBER 8, 2010—DECIDED FEBRUARY 25, 2011

Before FLAUM and EVANS, *Circuit Judges,* and
MCCUSKEY, *District Judge.**

EVANS, *Circuit Judge.* Marqitis Wright and Justin Holt
were best friends. They referred to each other as step-
brothers. Holt dated, and later moved in with, the aunt
in whose house Wright once lived. Holt and Wright

---

* The Honorable Michael P. McCuskey, United States District
Court for the Central District of Illinois, sitting by designation.

had something else in common: drugs. Holt began dabbling in drugs from a very young age, and in his later teens Wright joined him in this endeavor. At some point, Holt and Wright became involved in dealing drugs to Carmen Estrada, and on two occasions, October 25, and November 8, 2007, Estrada bought guns from the duo.

Unbeknownst to Holt and Wright, Estrada was actually a confidential informant for the Bureau of Alcohol, Tobacco and Firearms (ATF), albeit one who continued to use crack cocaine obtained through her own private purchases. Estrada was also a convicted felon, a fact she mentioned to Holt and Wright during the October 25 transaction, the entirety of which was caught on video and audiotape by the ATF (as was the November 8 transaction).

Holt and Wright were arrested, and Wright was charged with two counts of selling a firearm to a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Holt was charged with four counts and pled guilty to two of them. Wright pled not guilty and went to trial.

At Wright's trial the jury saw the video and audio recordings of the October 25 and November 8 transactions with concurrent transcription, and during deliberations the jury requested the October 25 recording again, this time without transcription. What the jury did not see during trial was Holt. Although Holt was originally on the government's witness list, he was interviewed a few days before trial and provided, as the government saw it, a statement that was not entirely truthful. He

said, amongst other things, that he and Wright never discussed Estrada's felony status in connection with the gun sale. After his interview, the government decided not to call Holt as a witness. Wright was informed of this fact. The government also informed Holt's attorney of its view that Holt was not being truthful, and further informed Wright's attorney that Holt's statement might be potentially exculpatory for Wright.

The trial judge had Holt produced outside of the jury's presence, where Holt stated, on the advice of his attorney, that he would assert his Fifth Amendment right not to testify if called as a witness. At this time, although Holt had pled guilty, he was awaiting sentencing, and so he faced possible sentencing guideline adjustments as well as further prosecution if he perjured himself or obstructed justice. Holt also stated that the government had neither threatened him nor made any promises to him pertaining to his refusal to testify. The district judge found that Holt's exercise of his Fifth Amendment privilege rendered him unavailable as a witness.

Faced with this situation, Wright requested that the government seek a grant of immunity for Holt so that anything he testified about could not be used against him. The Assistant U. S. Attorney prosecuting the case declined, stating,

> [t]he United States is not going to seek immunity for a witness on perjury offenses; in other words, so that the witness could take the stand, perjure himself,

and we would have no recourse. If there had been some other offense that Mr. Holt had criminal exposure on that was relevant to his potential testimony . . . that could be considered. . . . But the United States does not believe it's appropriate for—and I can't imagine the Department of Justice authorizing immunity for potential perjury should Mr. Holt be allowed to take the stand.

The trial concluded without Holt giving testimony. Wright was found guilty on both counts. Wright now seeks a new trial claiming the judge erred in not conducting a colloquy with Holt before allowing him to assert his Fifth Amendment privilege, and that the government violated Wright's Fifth Amendment due process and Sixth Amendment compulsory process rights by refusing to move the judge to confer a grant of immunity on Holt. We review a judge's Fifth Amendment privilege finding for an abuse of judicial discretion, and we review an immunization decision only when there is substantial evidence showing a clear abuse of prosecutorial discretion. *United States v. Longstreet*, 567 F.3d 911, 922 (7th Cir. 2009); *United States v. Hooks*, 848 F.2d 785, 799 (7th Cir. 1988) (citing *United States v. Taylor*, 728 F.2d 930, 935 (7th Cir. 1984)).

"[W]hen a witness invokes his Fifth Amendment right, the district court should confirm that he 'cannot possibly incriminate himself,' and if the 'witness's testimony may make him vulnerable to prosecution, the trial court may allow him to . . . refuse to testify.'" *Longstreet*, 567 F.3d at 922 (citing *United States v. Mabrook*,

301 F.3d 503, 506 (7th Cir. 2002)). Also, as pertinent here, a defendant who has not yet been sentenced may still assert his Fifth Amendment right against self-incrimination if called to testify. *Longstreet*, 567 F.3d at 922; *see also Mitchell v. United States*, 526 U.S. 314, 325 (1999). Wright contends that the trial judge's lack of colloquy with Holt means that the district court did not confirm that Holt could not "possibly incriminate himself" if forced to testify.

The judge, in ruling that Holt could claim his Fifth Amendment privilege, remarked, "[T]he Court, on the basis of the statement of Mr. Holt and the matters previously presented in this case, concludes that— and Mr. Holt has the right to invoke his privilege against self-incrimination, and that he has asserted that privilege and that the privilege must be respected in this matter." This statement, although a bit disjointed, suggests that based on the circumstances the judge believed a colloquy was unnecessary.

This makes sense, as the judge was not ruling in a vacuum. He was well aware of the situation up to this point. He was aware that Holt was a co-defendant awaiting sentencing. He was aware that the government thought Holt's testimony, if consistent with his statement during the interview, would be false. And he had just heard Holt say that he was invoking his Fifth Amendment right on the advice of his counsel, and that he had been neither coerced nor bribed by the government to do so.

Certainly, the judge *could* have engaged in an extended colloquy at this moment and asked more pointed ques-

tions. However, given what he knew about the situation, he was not required to do so. In this instance it was reasonable for the judge to conclude from the circumstances that Holt had a legitimate reason to invoke his Fifth Amendment privilege. Further, if we were to conclude that a colloquy was required, Wright would get only partial relief as the proper remedy would be remand for the making of a more complete record, not a new trial.

As for Wright's prosecutorial abuse of discretion claim, such an abuse only occurs when a prosecutor intends to use his authority under the immunity statute to distort the judicial fact-finding process. *Taylor*, 728 F.2d at 935. Wright has provided no evidence of such an abuse. His claim rests on the fact that Holt was on the government's witness list until the government found out that his statement (if true, of course) would help Wright. And so the government correctly identified Holt's statement as "potentially exculpatory" to both the judge and Wright's counsel.

Wright claims that the government's behavior amounts to the "sharp tactics" denounced in *United States v. Herrera-Medina*, where we remarked that,

> in an appropriate case, the refusal of the government to immunize a defense witness might be at once so damaging to the defense and so unjustifiable in terms of legitimate governmental objectives that the refusal to grant immunity would be a denial of due process of law to the defendant, and preclude his conviction.

853 F.2d 564, 568 (7th Cir. 1988). We do not believe that the government's behavior here amounts to such sharp

tactics, nor do we believe that the refusal to grant immunity was so damaging to the defense as to be a denial of due process, and Wright has provided no evidence to the contrary.

It is within the province of a prosecutor to decline to call a witness she fears may perjure himself. In our case, the government informed Wright of the decision not to call Holt, as well as of the potentially exculpatory nature of Holt's testimony, as soon as the interview with Holt was completed. Granted, this interview took place shortly before trial, but as the government had no reason to believe Holt would give a potentially exculpatory statement, there is no reason to think that this was a tactical delay on the government's part. In fact, it looks like the eleventh-hour statement from Holt took the government by surprise as it was expected that, if called, Holt would help drive another nail into Wright's coffin.

Further, avoiding future violations of the law, such as potential perjury, is hardly an unjustifiable and illegitimate government objective. Here, the government made it clear, through multiple representatives, that the concern with Holt's testimony was the fear, based on inconsistencies between his statement and the facts as the government understood them, that Holt would perjure himself. The government went so far as to explain that immunity for other violations could be considered, but that immunity for potential perjury would be out of the question.

As far as damage to the defense goes, we believe that any damage done by the unavailability of Holt was mini-

mal. Wright claims that Holt's testimony was imperative to rebut Estrada's claims that Wright knew she was a felon, and that she'd mentioned her felony status on more than one occasion. Even without Holt's testimony, the jury might be skeptical of Estrada, a witness who, in the words of the government, "came with a lot of baggage." The jury was aware that Estrada was a paid informant who had originally gotten into the game to work off a drug bust and who still bought and used crack cocaine outside of her confidential informant role. It is not clear that testimony from a close friend (a pro-verbial "step-brother") of Wright's would work to dis-credit Estrada any further than her own behavior would.

Further, whatever the jury thought of Estrada, it also had audio-visual proof, in the form of the October 25 video, that Estrada mentioned her felony status at least once in Wright's presence. Therefore, even if the jurors completely disregarded Estrada's testimony, they could still credit the video, which they viewed both with and without transcription, and find that Wright was aware of Estrada's felony status. The refusal to move to im-munize Holt was not an abuse of discretion.

For the foregoing reasons, the judgment of the district court is AFFIRMED.